NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CUDELLIOUS LOVE, *Appellant*.

No. 1 CA-CR 15-0805
FILED 2-2-2017

Appeal from the Superior Court in Maricopa County
No.  CR2014-002011-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge James P. Beene joined.

D O W N I E, Judge:

¶1　　　　Cudellious Love appeals his conviction and sentence for first-degree murder.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2　　　　The victim lived in an apartment complex managed by W.P. and was W.P.'s next door neighbor.  On Saturday, July 15, 1989, W.P. and the victim attended a meeting together.  Because the victim's vehicle was being repaired, she borrowed W.P.'s car for the evening.  After the meeting, the victim left, alone, and W.P. and her boyfriend went out for coffee.  When W.P. returned to the apartment complex around 10:00 p.m., she saw that her vehicle was parked in its usual spot.

¶3　　　　The following day, W.P. called the victim, but could not reach her.  On Monday morning, W.P. noticed that the victim's patio screen door was ajar.  W.P. called the victim again, but no one answered. W.P. then called the victim's employer and learned that she had not appeared for work on either Sunday or Monday. W.P. asked another individual to accompany her into the victim's apartment.  Upon entry, she saw the victim lying on the hallway floor with her skirt pulled up around her waist.

¶4　　　　When emergency responders arrived, they pronounced the victim dead. The victim had sustained stab wounds to her chest and abdomen.  Her panties had been removed, her legs spread apart, and a "yellowish clear dried substance" later identified as semen was on her pelvic area.  Police officers collected the substance, as well as the victim's panties and other forensic evidence. A former medical examiner determined that the victim died from two, six-inch deep stab wounds to her chest and abdomen.  The former medical examiner also noted that the

---

[1]　　We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

victim had a black eye, and based on its "fresh" coloration, opined that she may have been rendered unconscious immediately before her death.

¶5        Notwithstanding the forensic evidence from the crime scene, the murder went unsolved.  As technology advanced, though, the semen collected from the victim's pelvic region was subjected to DNA analysis and a DNA profile of the assailant was created.  In 2001, that profile was entered into the national CODIS DNA database run by the FBI.   In February 2014, local law enforcement authorities were notified that the DNA profile matched Love's DNA profile.

¶6        In May 2014, Phoenix police officers located Love and transported him to police headquarters.  Love submitted to an interview and provided buccal swab samples.  The DNA profile from the buccal swabs matched the DNA profile of the semen collected from the victim.

¶7        The State charged Love with one count of first-degree murder, one count of sexual assault, and one count of first-degree burglary.  Because the sexual assault and burglary charges were time-barred by the statute of limitations, the trial court dismissed those counts, leaving only the first-degree murder charge for trial.

¶8        After an eight-day trial, the jury unanimously found Love guilty of both premeditated and felony first-degree murder.  The trial court sentenced Love to life imprisonment with the possibility of release after twenty-five years.  Love timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.      *Batson* Challenge

¶9        Love challenges the State's peremptory strike of all racial minorities from the venire panel and argues the trial court erred by denying his *Batson* challenge.  *See Batson v. Kentucky*, 476 U.S. 79 (1986).

¶10        "[U]sing a peremptory strike to exclude a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment."  *State v. Newell*, 212 Ariz. 389, 400, ¶ 51 (2006). We will uphold the denial of a *Batson* challenge absent clear error.  *Id*. at ¶ 52.  Because the trial court is in the best position to assess a prosecutor's credibility — a primary factor in evaluating the State's motive for exercising

a peremptory strike — we extend "great deference" to the trial court's ruling. *State v. Roque*, 213 Ariz. 193, 203, ¶ 12 (2006).

**¶11**     A *Batson* challenge consists of three steps. *Newell*, 212 Ariz. at 401, ¶ 53. First, the defendant must make a prima facie showing of racial discrimination. *Id*. If such a showing is made, the State must then present a race-neutral reason for the strike. *Id*. If the prosecutor provides a facially neutral basis, "the trial court must determine whether the defendant has established purposeful discrimination." *Id*. "To pass step two, the explanation need not be persuasive, or even plausible," but "implausible or fantastic justifications may (and probably will) be found to be pretextual" when the trial court determines whether the defendant has proven purposeful discrimination. *Id*. at ¶ 54.

**¶12**     Defense counsel challenged the State's peremptory strike of three jurors who were members of a racial minority (Juror Nos. 19, 69, and 91). The trial court found that Love made a prima facie showing of discrimination, satisfying the first step. The prosecutor then offered race-neutral reasons for each strike: (1) No. 19 — language barrier; (2) No. 69 — appeared "very quiet, very timid, [and] very withdrawn"; and (3) No. 91 — inappropriate experience, having completed a six-month internship at a correctional facility working with sex offenders. In evaluating the prosecutor's proffered reasons, the court noted that Juror 19 spoke with an accent and "struggle[d] a bit with the questionnaire," and Juror 69 "did not say much . . . she didn't offer much." The court then concluded the proffered race-neutral reasons for the strikes of all three jurors were both reasonable and supported by the record. At that point, defense counsel offered nothing further to support his *Batson* challenge, other than noting that he had at least two previous cases in which the State exercised peremptory strikes to remove all minority jurors.

**¶13**     Because Love failed to present evidence that the peremptory strikes were the result of purposeful racial discrimination, and there is no basis in the record for concluding the prosecutor's race-neutral reasons were pretextual, the trial court did not err by rejecting Love's *Batson* challenge. *Cf. Foster v. Chatman*, 136 S. Ct. 1737, 1748–49 (2016) (concluding State's race-neutral reasons were pretextual based on prosecutor's misrepresentation of the record and notes revealing an intent to remove Black jurors).

## II.      Denial of Motion for Mistrial

¶14        Love contends the court erred by denying his motion for mistrial based on comments he characterizes as prosecutorial misconduct.

¶15        To determine whether a prosecutor's comments constitute "misconduct that warrants a mistrial, a trial court should consider two factors: (1) whether the prosecutor's statements called to the jury's attention matters it should not have considered in reaching its decision and (2) the probability that the jurors were in fact influenced by the remarks." *Newell*, 212 Ariz. at 402, ¶ 60. The defendant bears the burden of demonstrating that the challenged statements, "in the context of the entire proceeding, so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. "Because the trial court is in the best position to determine the effect of a prosecutor's comments on a jury, we will not disturb a trial court's denial of a mistrial for prosecutorial misconduct in the absence of a clear abuse of discretion." *Id*. at ¶ 61. "To warrant reversal, the prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*.

¶16        On the fifth day of trial, the State called Love's ex-wife to testify. During direct examination, the prosecutor asked how long she had known Love, and the ex-wife answered, "[s]ince I was about 15 ½." The prosecutor then asked, "Did you start dating him at that time?" and she confirmed that she did. As a follow-up question, the prosecutor asked, "how much older is he than you?" and the ex-wife answered, "[a]bout seven years."

¶17        At that point, defense counsel objected and moved to strike the answer. Counsel explained during a bench conference that he "was completely blindsided" and had "no prior knowledge" the State "was going to infer that [Love was] guilty of statutory rape." Defense counsel moved for a mistrial, arguing Love had been "prejudiced beyond rehabilitation." The trial court noted that the ex-wife had only "said they were dating," and the prosecutor avowed that he would not ask whether "they had sex during that time." Defense counsel countered that an explicit question about sexual relations was unnecessary because "in common nomenclature dating often means having sex." The trial court denied the motion for mistrial and overruled the objection. When direct examination resumed, the ex-wife testified she married Love in 1984 and left him in July 1989.

¶18 The following morning, defense counsel renewed his motion for mistrial, arguing the prosecutor only elicited testimony about the age difference for an improper purpose — namely, to suggest Love committed statutory rape. Defense counsel further argued that, based on the prosecutor's question, the jury might conclude that Love's DNA profile was entered in CODIS because he is a sex offender. The trial court noted that the age difference was of limited relevance but concluded Love was not prejudiced because there was no evidence he and the ex-wife engaged in sexual relations before she reached the age of majority. The court also noted that the ex-wife did not imply there was anything improper about the relationship. However, the court stated it would consider giving a limiting instruction if defense counsel submitted one.

¶19 Defense counsel did not request a limiting instruction but did offer a jury instruction regarding the CODIS DNA database, which the trial court included in its final instructions:

> CODIS DNA DATABASE. There are multiple reasons why an individual's DNA profile might be entered into the CODIS DNA Database. The jury should not speculate or guess as to the reason why [Love's] profile was entered into the CODIS DNA Database. The reason that [Love's] profile was entered into the CODIS DNA Database is not relevant to any issue that the jury will be considering in this case.

¶20 Although the record supports the trial court's observation that the age difference had little relevance, it also supports the additional finding that Love was not prejudiced by the testimony. The ex-wife never stated that she and Love engaged in underage sexual relations, and the prosecutor did not mention the age difference during closing argument or otherwise suggest Love had committed statutory rape. To the extent jurors may have questioned why Love's DNA profile was in CODIS — a question likely to arise irrespective of the age difference testimony — the court instructed jurors not to speculate about the reason. The jury is presumed to have followed its instructions, and Love has not presented evidence to overcome this presumption. *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996). On this record, the trial court did not abuse its discretion by denying the motion for mistrial.

## III. Denial of Motion for Judgment of Acquittal

¶21 Love also contends the court erred by denying his motion for judgment of acquittal. Focusing primarily on the theory of premediated

first-degree murder, Love argues he had no preexisting relationship with the victim or motive to kill her, and the State therefore failed to prove premeditation. Without elaboration, Love also asserts that the State did not present evidence that he either sexually assaulted or attempted to sexually assault the victim.

**¶22** We review *de novo* a trial court's ruling on a Rule 20 motion for judgment of acquittal. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at ¶ 16. Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial. *State v. Borquez*, 232 Ariz. 484, 487, ¶ 11 (App. 2013). A judgment of acquittal is appropriate only when "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a).

**¶23** As charged here, a person commits first-degree murder by:

1. Intending or knowing that his conduct will cause death, such person causes the death of another with premeditation, or

2. Acting either alone or with one or more other persons such person commits or attempts to commit . . . sexual assault . . . [or] burglary . . ., and in the course of . . . such offense . . . , such person or another person causes the death of any person.

A.R.S. § 13-1105(A); 1987 Ariz. Sess. Laws, ch. 307, § 7 (1st Reg. Sess.).[2] Under subsection (A)(2)'s felony-murder provision, no specific mental state is required "other than what is required for the commission of any of the enumerated felonies." A.R.S. § 13-1105(B); 1987 Ariz. Sess. Laws, ch. 307, § 7 (1st Reg. Sess.). Because the jury unanimously found Love guilty of both premeditated and felony murder, substantial evidence supporting either theory is sufficient to sustain his conviction.

**¶24** A person commits sexual assault by "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." A.R.S. § 13-1406(A); 1989 Ariz. Sess. Laws, ch. 199, § 1 (1st Reg. Sess.) (effective May 16, 1989). A person attempts an act by intentionally taking "any step in a course of conduct

---

[2] We cite the statutory provisions in effect at the time of the charged offenses.

planned to culminate in commission of an offense." A.R.S. § 13-1001(A)(2); *see also State v. Zaragoza*, 135 Ariz. 63, 67 n.2 (1983) ("A person commits attempted sexual assault by doing any act that is a step toward committing a sexual assault with the intent to complete the offense.").

**¶25** Read together, and as relevant here, a person commits first-degree felony murder if he intentionally or knowingly attempts to engage in sexual intercourse or oral sexual contact without the victim's consent, and in the course of attempting such sexual contact, causes the victim's death. In this case, the evidence reflected that the victim was attacked, struck in the face, and stabbed twice. Immobilized, she was then positioned on the floor, her panties removed, her skirt lifted to her waist, and her legs spread apart. Her attacker deposited semen on her pelvic region before leaving her either dead or with fatal injuries. With an exceedingly high level of statistical probability (1 in 110 quadrillion African Americans), that semen was identified as belonging to Love. Because an *attempted* sexual assault can serve as the predicate felony offense for first-degree felony murder, it is no defense that Love might not have ejaculated within the victim's body. *See also State v. Lacy*, 187 Ariz. 340, 350 (1996) ("Even if the statute of limitations has expired on the predicate offense, a defendant may still be prosecuted for felony murder.").

**¶26** There was sufficient evidence from which a reasonable jury could find that Love attempted sexual intercourse or oral sexual contact with the victim without her consent, and in the course of doing so, caused her death. The trial court did not err by denying Love's Rule 20 motion.

## IV. Denial of Motion to Vacate Verdict and Request for New Trial

**¶27** Love argues the court erred by denying his motion to vacate the verdict and order a new trial. Specifically, he contends the State failed to disclose relevant, material evidence that may have led to a different verdict.

**¶28** Pursuant to Rule 24.1(c), a court may order a new trial when, as relevant here, the prosecutor has been guilty of misconduct or "[f]or any other reason not due to the defendant's own fault the defendant has not received a fair and impartial trial." We generally review the denial of a motion for new trial for an abuse of discretion. *State v. Spears*, 184 Ariz. 277, 287 (1996). We review constitutional claims, however, *de novo*. *State v. Harrod*, 218 Ariz. 268, 279, ¶ 38 (2008).

**¶29** The day after the case was submitted to the jury, the prosecutor informed defense counsel and the trial court that the State had

received notice from the FBI that certain DNA random match probability tables from the 2001 CODIS database were inaccurate. Because the DNA profile in this case was uploaded to the FBI's database in 2001, defense counsel suggested the State may have failed to comply with its disclosure obligations, depending on when the State learned that the probability calculations were not wholly reliable. The prosecutor avowed that he disclosed the FBI notice the day after the county attorney's office received it. The court instructed the prosecutor to provide defense counsel with the initial notice the State received. Later that day, the jury returned its verdict.

¶30     The following day, after receiving the State's additional disclosures, Love moved to vacate the guilty verdict and requested a new trial. Arguing that the State, via the Phoenix Crime Lab, was notified of the probability table inaccuracies no later than May 11, 2015, Love argued the failure to timely disclose the information violated *Brady v. Maryland*, 373 U.S. 83 (1963). The State argued in response that no disclosure was mandated because, applying the FBI's amended probability statistics, the only change from the calculations presented to the jury was a slight *increase* in the confidence level of the match.

¶31     The trial court denied Love's motion, concluding the prosecutor did not engage in misconduct and Love was not denied a fair trial. Specifically, the court found:

> [T]he State promptly turned over the information regarding faulty CODIS statistics as soon as the information was obtained. While general evidence of CODIS errors would be relevant and material in a case involving a CODIS identification, the specific data in this case could not have led the jury to entertain a reasonable doubt about the defendant's guilt because the statistics presented to the jury did not change (or did not change in Defendant's favor). The Court finds that there was no prejudice to the Defendant in this case that resulted from the disclosure of the CODIS errors or from the prosecutor's conduct.

¶32     The State must disclose all "evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). "The test for a *Brady* violation is whether the undisclosed material would have created a reasonable doubt had it been presented to the jury." *State v. Jessen*, 130 Ariz. 1, 4 (1981). Here, even assuming the State had notice of the updated probability tables as early as May 11, 2015, it is undisputed that the revised information was not

favorable to Love. Indeed, Love does not challenge the trial court's finding that the only change was a slight increase in the confidence level associated with his DNA match. Under these circumstances, the court did not err by denying Love's motion to vacate the verdict.

## CONCLUSION

¶33     Love's conviction and sentence are affirmed.

