IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0184 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| ROBERT FRANCISCO BORQUEZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20112027001

Honorable Deborah Bernini, Judge

AFFIRMED IN PART; VACATED IN PART

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Amy Pignatella Cain                       Tucson
Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Scott A. Martin                                            Tucson
Attorneys for Appellant

M I L L E R, Judge.

¶1        Appellant Robert Borquez was convicted of theft of a credit card, fraudulent use of the credit card, and theft by misrepresentation relating to the credit card. On appeal he challenges the conviction of theft by misrepresentation, arguing there was

insufficient evidence establishing the elements of the offense. In addressing these issues we must decide whether A.R.S. § 13-1802(A)(3) requires a material misrepresentation to the person who suffered a loss, or if a misrepresentation to a third party that is instrumental in causing the wrongful act is sufficient. For the reasons stated below, we affirm the convictions but vacate a portion of the sentence imposed.

**Factual and Procedural Background**

¶2 Borquez was charged in count one of the indictment—the charge that is relevant to this appeal—with theft by obtaining more than $4,000 but less than $25,000 from the victim credit card company "and/or" T.M. "by means of a material misrepresentation with intent to deprive," in violation of A.R.S. § 13-1802(A)(3). Subsection (A)(3) of the statute constitutes one of six ways in which a person may commit the offense of theft. *See State v. Dixon*, 127 Ariz. 554, 561-62, 622 P.2d 501, 508-09 (App. 1980) (finding that § 13-1802 defines single offense—theft—that can be committed in multiple ways). It provides as follows: "A person commits theft if, without lawful authority, such person knowingly . . . [o]btains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services." § 13-1802(A)(3). Section 13-1801(A)(8), A.R.S., defines "material misrepresentation" as "a pretense, promise, representation or statement of present, past or future fact that is fraudulent and that, when used or communicated, is instrumental in causing the wrongful control or transfer of property or services."

¶3 Viewed in the light most favorable to sustaining the verdicts, the evidence presented at the jury trial established the following. *See State v. Haight-Gyuro*, 218 Ariz.

2

356, ¶ 2, 186 P.3d 33, 34 (App. 2008). Borquez was living with his then-fiancée, Z.M., and her mother, T.M., when T.M. noticed her credit card was missing. A few weeks later, T.M. found two receipts from Pima County Superior Court totaling $5,195 and a credit card receipt reflecting payment to the court in that amount on behalf of Borquez. T.M. called the credit card company when she discovered the receipts, confirming the charges had been incurred. The amount subsequently was reflected on T.M.'s credit card statement. T.M. never authorized Borquez to use her credit card.

¶4        T.M. also called the police and an officer went to her home. The officer questioned Borquez, who admitted he had taken the credit card off of the kitchen counter about a month earlier. Borquez was arrested and as Z.M. was saying good-bye to him, she asked him what had happened. He responded that he had stolen her mother's credit card and had used it to pay his court fees.

¶5        Pima County collections officer and supervisor Ray Rivas testified about the processing and tracking of account collection information through its computer system. Rivas read to the jury the following notes that a collections clerk had entered into the system with respect to Borquez's account: "[D]efendant['s] father called in info, paid balance on account at time of call" using a credit card. Rivas added, "Then the collector verified the address . . . of the cardholder." Borquez had given the person a credit card number for a card issued to T.M. Rivas noted it is "pretty routine" for a family member to pay a person's fees and fines.

¶6        The prosecutor argued in closing argument that Borquez had stolen the credit card from T.M. and had used it to pay what he owed to the superior court,

3

admitting to Z.M. he had done this. He stated Borquez had obtained the property of another by "obtain[ing] $5,200 to make good on the bill he owed to Superior Court." With respect to the element of material misrepresentation, the state contended, "Misrepresentation occurred when [Borquez] called Superior Court and told them over the phone that he was the cardholder and that he was authorized to make the payment." The prosecutor acknowledged T.M. is a woman, but argued that because her first name is gender-neutral, "there's a certain degree of ambiguousness of what gender we're talking about." The prosecutor also argued that "[t]he second element, . . . the intent to deprive the other person of the property or services," could be inferred "by knowing that [Borquez's] account [with the court] was cleared out" and he "no longer owed" the nearly $5,200 obligation.

¶7 Defense counsel conceded there was sufficient evidence for the jury to find Borquez guilty of counts two and three, theft of a credit card and fraudulent use of a credit card. But, he argued, the state had not proven Borquez had committed theft by misrepresentation because the offense did not "apply to the fact[s] of this case." Counsel argued that Borquez "didn't obtain the money, which is what they allege in Count One." "He never had any money in his hands. He never obtained any other sort of property, a television or anything like that. What he obtained was a credit card," which was covered by a "separate law," and a separate charge. The jury found Borquez guilty on all three counts. The trial court sentenced him to imposed concurrent, mitigated sentences, the longest of which was 3.5 years, and entered a criminal restitution order in favor of the victim credit card company.

4

**Discussion**

¶8      Borquez contends there was insufficient evidence he made a material misrepresentation to anyone. Additionally, relying to a large degree on *State v. Schneider*, 148 Ariz. 441, 715 P.2d 297 (App. 1985), Borquez contends on appeal an essential element of the offense is reliance by a victim on a material misrepresentation. He argues, "even overlooking the deficient factual support for the alleged misrepresentation, there was no showing of a material misrepresentation leading to actual reliance by the victim." He adds, "There was no evidence that the Superior Court Clerk's employee that conducted the transaction did so because of any misrepresentation by Appellant." He argues none of the evidence the state presented established that the person using the card had to be the cardholder. And, he claims, "it is not even clear who the alleged theft victim was in the case." We first address whether there was sufficient evidence for the jury to find a material misrepresentation, and then turn to the contention that the misrepresentation must be made directly to the victim or in such a manner to induce reliance by the victim.

¶9      Whether sufficient evidence was presented to sustain the verdict is a question of law this court reviews de novo. *See State v. West*, 226 Ariz. 559, ¶ 15, 250 P.3d 1188, 1191 (2011). We review the evidence "presented at trial only to determine if substantial evidence exists to support the jury verdict." *State v. Hausner*. 230 Ariz. 60, ¶ 50, 280 P.3d 604, 619 (2012). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz.

5

64, 67, 796 P.2d 866, 869 (1990), *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). In reviewing the record, we view the evidence and the reasonable inferences the evidence permits in the light most favorable to sustaining the verdict. *See State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). We do "not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Barger*, 167 Ariz. 563, 568, 810 P.2d 191, 196 (App. 1990) (citation omitted).

¶10 Borquez argues the state did not sustain its burden of proving he had made a material misrepresentation to the superior court because it did not call as a witness the superior court employee who received the telephone call from the person claiming to be Borquez's father. He maintains Rivas had no personal knowledge about this matter or the telephone conversation and the exhibits the state introduced did not establish the person who made the call had "identified himself as the cardholder or as [T.M.]." He argues that although he admitted he had used the credit card to pay his court fines and fees, he did not admit he was the one who had called the superior court.

¶11 Whether evidence is circumstantial or direct, it may be substantial and, therefore, sufficient to support a conviction as long as reasonable jurors could find it permits the inference of the defendant's guilt beyond a reasonable doubt. *State v. Henry*, 205 Ariz. 229, ¶ 11, 68 P.3d 455, 458 (App. 2003). And in reviewing the sufficiency of

6

the evidence, we do not distinguish circumstantial from direct evidence. *See State ex rel. O'Neill v. Brown*, 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995).

**¶12** Borquez admitted to Z.M. he had stolen T.M.'s credit card and had used it to pay the amount he owed to superior court. And as we previously noted, counsel conceded during closing argument that Borquez had committed the offenses in counts two and three, theft of a credit card and fraudulent use of a credit card. Through exhibits and Rivas's testimony, the state established T.M.'s credit card had been used to pay the nearly $5,200 Borquez owed in fees and fines after a person who identified himself as Borquez's father spoke to a superior court employee and gave the person the credit card number and cardholder name. Rivas testified without objection to his qualifications about the court's general practices and it was clear he based his testimony about the payment of the balance on Borquez's account on notes entered into the computer by another employee. It was for the jury to assess Rivas's credibility and, based on that assessment, determine how much "weight and value" to give his testimony. *State v. Cox*, 217 Ariz. 353, ¶ 27, 174 P.3d 265, 269 (2007).

**¶13** Based on this and other evidence, including Borquez's admissions to Z.M., and his admissions through counsel's closing argument, reasonable jurors could infer Borquez was the person who had misrepresented his identity to a court employee. The jury readily could find Borquez had intended to induce the person on the telephone to believe that he was not only authorized to use the credit card but, given T.M.'s gender-neutral first name and his having provided the cardholder's correct address, that he was the cardholder.

7

¶14 We next address Borquez's contention that the material misrepresentation at the superior court did not result in "actual reliance by the victim." He maintains that even assuming, as the state asserted in its answering brief, the credit card company was the victim, there was no evidence Borquez had made a material misrepresentation to the company, and that it had relied on that misrepresentation. He insists the evidence only showed he had fraudulently used the credit card, supporting his conviction on count three, in violation of A.R.S. § 13-2105, not theft by misrepresentation, in violation of § 13-1802(A)(3), alleged in count one.

¶15 Based on the plain language of § 13-1802(A)(3), there is no requirement that the victim whose property was taken must be the party to whom the misrepresentation was directly made in order for the victim to have relied on a material misrepresentation. *See State v. Hinden*, 224 Ariz. 508, ¶ 9, 233 P.3d 621, 623 (App. 2010) (to interpret meaning of plain and unambiguous statute court must consider its language, which is "'the best and most reliable index of a statute's meaning'"), *quoting State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). Rather, the statute provides that a person commits the offense by "knowingly . . . [o]btain[ing] services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services." § 13-1802(A)(3). Nor does the definition of material misrepresentation specify that the representation must be made directly to the victim whose property or services are taken. *See* § 13-1801(A)(8). It is sufficient that the material representation, to the victim or to a third-party, plays an instrumental role in the wrongful taking of property or services. The state presented sufficient evidence from

8

which reasonable jurors could find Borquez had made material misrepresentations to induce the superior court to accept a stolen credit card as payment for his court fines.

¶16        Borquez also relies on *Schneider* where we stated there must be reliance by the victim to sustain a conviction of theft by false pretenses, the precursor offense under the former version of § 13-1802(A)(3).  148 Ariz. at 444, 715 P.2d at 300; *see also State v. Mills*, 96 Ariz. 377, 381, 396 P.2d 5, 8 (1964), *and State v. Sharma*, 216 Ariz. 292, ¶ 9, 165 P.3d 693, 696 (App. 2007).  In *Schneider*, the alleged misrepresentations had been made directly to each victim, who thereafter invested in what was referred to as a "Ponzi" scheme.  *Schneider*, 148 Ariz. at 443, 715 P.2d at 299.  In refusing a requested instruction on reliance, the trial court found the instruction on material misrepresentation covered the term.  *Id.* at 444, 715 P.2d at 300.  Affirming the conviction on appeal, this court acknowledged that reliance is an element of the offense, but found essentially the same instruction that was given here made that clear to the jury.  *Id*. at 444-45, 715 P.2d at 300-01.

¶17        *Schneider* does not, however, foreclose application of the statute to a situation where the misrepresentation was made to a third party who relied on it, thus resulting in the victim's loss of property.  Here, the jury reasonably could find Borquez had made material misrepresentations to the superior court's collections clerk by identifying himself as Borquez's father, and by paying the balance on Borquez's account with a credit card, thereby representing he had authority to use the card.  Borquez's misrepresentations were based on his words as well as his conduct.  He essentially held himself out to be his father and the cardholder or, at the very least, his father who had

9

been authorized to use the credit card. Relying on these material misrepresentations, the clerk conducted the transaction, taking more than $5,000 from the credit card company. The credit card company relied on the misrepresentations, albeit indirectly, by processing the transaction the court clerk had conducted.

**¶18** Neither party cites Arizona case law that is directly on point, and we have found none. But cases from other jurisdictions involving a criminal misrepresentation to a third-party reject the suggestion that a defendant's misrepresentation must be made to the person who ultimately suffers a loss. *See generally*, *Bolet v. United States*, 417 A.2d 386, 393 (D.C. 1980); *State v. McDonald*, 534 S.W.2d 650, 652-53 (Tenn. 1976); *Commonwealth v. Kiernan*, 201 N.E.2d 504, 515 (Mass. 1964). For instance, in *Mosteller v. Commonwealth*, 279 S.E.2d 380, 381-82 (Va. 1981), the defendant concocted an elaborate scheme providing fraudulent paperwork to vendors in order to solicit excessive payments from the state. The Virginia Supreme Court rejected defendant's argument he could not be convicted of fraudulent misstatements to others that merely set up the scheme. *Id.* The same reasoning applies here. Borquez made misrepresentations to the superior court clerk so that his unauthorized use of T.M.'s credit card would be accepted.

**¶19** Finally, although Borquez has not raised the issue on appeal, we find fundamental error associated with the trial court's imposition of a criminal restitution order (CRO) at sentencing. *See* A.R.S. § 13-805;[1] *see also Fernandez*, 216 Ariz. 545,

---

[1]Section 13-805 has been amended since the theft offenses. *See* 2012 Ariz. Sess. Laws, ch. 269, § 1; 2011 Ariz. Sess. Laws, ch. 263, § 1 and ch. 99, § 4. We apply the

¶ 32, 169 P.3d at 650 (court will not ignore fundamental error when it finds it). In the sentencing minute entry, the trial court ordered that "all fines, fees, assessments and/or restitution [be] reduced to a Criminal Restitution Order, with no interest, penalties or collection fees to accrue while [Borquez] is in the Department of Corrections." The imposition of a CRO before the expiration of Borquez's sentence "'constitute[d] an illegal sentence, which is necessarily fundamental, reversible error.'" *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009). This remains true even though the court ordered that the imposition of interest be delayed until after Borquez's release. *See id.* ¶ 5.

**Disposition**

¶20        For the foregoing reasons, we vacate the CRO. We otherwise conclude there was substantial evidence supporting the conviction of theft by material misrepresentation; therefore, we affirm the convictions and the sentences except as noted.

/s/ *Michael Miller*
MICHAEL MILLER, Judge

CONCURRING:
/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

---

version in effect at the time of the offenses, *see* 2011 Ariz. Sess. Laws, ch. 263, § 1 and ch. 99, § 4. *State v. Lopez*, 231 Ariz. 561, n.1, 298 P.3d 909, 910 n.1 (App. 2013).