NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHARLES D'MON HARDEN, *Appellant*.

No. 1 CA-CR 16-0371
FILED 9-28-2017

Appeal from the Superior Court in Maricopa County
No. CR2013-004990-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

D O W N I E, Judge:

¶1        Charles D'Mon Harden appeals his convictions and sentences for first-degree burglary, armed robbery, kidnapping, aggravated assault, and theft.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        At approximately 8:00 p.m. on March 3, 2013, D.Z., who was visiting his cousin N.V., heard "loud banging" at N.V.'s front door.  While N.V. answered the door, D.Z. remained in a back bedroom.  D.Z. heard only fragments of the ensuing front-door conversation, but he realized the situation "was serious" when he heard N.V. demand to see a search warrant and slam the door.

¶3        Seconds later, D.Z. heard the front door "bust[] open" and, within moments, saw "a gun pointed at [his] head."  Because the armed intruder wore camouflage clothing and tactical gear, D.Z. assumed he was a law enforcement officer and raised his hands.  The intruder then "kicked down" the bedroom closet doors and ransacked the room, repeatedly asking "where's it at?"

¶4        Meanwhile, N.V. ran outside after two intruders entered his house and attempted to call police.  One intruder followed him and confiscated his cell phone.  This armed man, who was also wearing tactical gear, identified himself as a sergeant, forced N.V. back into the house at gunpoint, and escorted him to the back bedroom.  N.V. and D.Z. sat on a bed with their hands up while the intruders searched the house.

¶5        At some point, the intruders opened a back door to let in a third man carrying an assault rifle.  D.Z. began to suspect that the intruders were not law enforcement officers.  N.V. again demanded to see a search warrant, and one of the men "grabbed [him] by the neck, picked [him] up,

---

[1]        We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

and slammed [him] into the bed and the wall." The intruders also seized D.Z.'s cell phone.

¶6 Once the intruders completed their search, they left. After waiting a brief period, N.V. and D.Z. ventured outside the bedroom. Without cell phones, they could not call the police, and they could not locate nearby neighbors. Soon thereafter, N.V.'s roommate, D.W., returned home. D.W. checked his bedroom and discovered that guns, watches, cell phones and other electronics were missing. He called the police.

¶7 Once police officers arrived, they separately questioned the young men. N.V. reported he recognized one of the intruders as the bouncer from a strip club he frequented, and based on that information, police officers compiled photo lineups. When presented with a six-person photo lineup, N.V. immediately identified Harden as the intruder who had pointed a gun at him. D.Z. also identified two of the intruders from photo lineups, including Harden.

¶8 As part of their investigation, police officers executed a search warrant on Harden's apartment. They seized camouflage utility pants, a badge, and photographs that pictured Harden wearing tactical gear.

¶9 The State charged Harden with: one count of first-degree burglary; two counts of armed robbery; two counts of kidnapping; two counts of aggravated assault; two counts of theft; and one count of misconduct involving weapons.[2] The State also alleged aggravating circumstances and that Harden had historical prior felony convictions.

¶10 After a 21-day trial, a jury found Harden guilty as charged. The jury also found aggravating circumstances as to each count. After trial, Harden pled guilty to the charge of misconduct involving weapons and the trial court found he had two historical prior felony convictions. The court then imposed aggravated, concurrent terms of 20 years' imprisonment on the burglary, armed robbery, and kidnapping counts, concurrent, aggravated terms of 15 years' imprisonment on the aggravated assault counts, concurrent, presumptive terms of three and three-quarters years' imprisonment on the theft counts, and a concurrent, presumptive term of two and one-half years' imprisonment on the misconduct involving weapons count. Harden timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[2] The misconduct involving weapons count was tried separately.

## DISCUSSION

### I.    Denial of Motion to Sever

¶11      Before trial, Harden moved to sever his trial from his codefendants, Keith Childress and James Steagall. Following an evidentiary hearing, the trial court denied the motion. The court also denied Harden's repeated renewal of the motion during trial.

¶12      We review a trial court's denial of a motion to sever for an abuse of discretion. *State v. Prince*, 204 Ariz. 156, 159, ¶ 13 (2003). Pursuant to Arizona Rules of Criminal Procedure ("Rule") 13.3(b), joinder of two or more defendants is permissible "when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Applying the rule to these facts, joinder was proper. Each defendant was charged with each offense.[3] In addition, there was substantial overlapping evidence implicating each of the codefendants. D.Z. and N.V. testified that at least three men invaded the residence, and each intruder brandished a weapon and helped ransack the home.

¶13      Because "joint trials are the rule rather than the exception," *State v. Murray*, 184 Ariz. 9, 25 (1995), when defendants are properly joined under Rule 13.3(b), severance is required only if "necessary to promote a fair determination of the guilt or innocence of any defendant." Ariz. R. Crim. P. 13.4(a). To succeed in challenging a denial of severance, a defendant "must demonstrate compelling prejudice against which the trial court was unable to protect." *Murray*, 184 Ariz. at 25. Such prejudice occurs when: (1) evidence admitted against one defendant is facially incriminating to another defendant; (2) evidence admitted against one defendant has a "harmful rub-off effect" on the other defendant; (3) there is significant disparity in the amount of evidence introduced against the defendants; or (4) codefendants present "antagonistic, mutually exclusive defenses or a defense that is harmful to the co-defendant." *Id*.

¶14      Harden argues the nature of his codefendants' defenses mandated severance. Specifically, he contends his defense that he never

---

[3]     Although the misconduct involving weapons counts were against individual defendants, those counts were severed from the first-degree burglary, armed robbery, kidnapping, aggravated assault, and theft counts for trial.

entered N.V.'s residence was antagonistic to his codefendants' claim that they lawfully entered N.V.'s home as bounty hunters. "[T]he mere presence of hostility between co-defendants, or the desire of each co-defendant to avoid conviction by placing the blame on the other," does not compel severance. *State v. Cruz*, 137 Ariz. 541, 544 (1983). Severance is required only when defenses are "antagonistic to the point of being mutually exclusive," that is, "only when the competing defenses are so antagonistic at their cores that both cannot be believed." *Id.* at 544–45.

¶15 None of the codefendants testified at trial, and no statements by the codefendants pertaining to any other codefendant were admitted.[4] Harden presented an alibi witness who testified that he and Harden were at Harden's apartment the entire evening of March 3, 2013, and the other codefendants did not present affirmative evidence.

¶16 During closing argument, Harden's attorney maintained that Harden was not at N.V.'s residence on March 3, 2013, and suggested the victims had misidentified Harden due to stress and "subtle messages" from the officers who administered the photo lineups. Codefendant Steagall's attorney argued there was no physical evidence to tie his client to the crime scene, and codefendant Childress's attorney argued that Steagall and Childress were bounty hunters simply doing their "job." Counsel for Steagall and Childress acknowledged that their clients' defenses were independent, but neither attorney attempted to inculpate Harden or even place him at the scene. Thus, the codefendants' defenses were not overtly antagonistic toward Harden and did not defeat his claim that he never entered N.V.'s home on March 3, 2013.

¶17 Harden next contends the court should have severed his trial to protect him from the harmful rub-off effect of evidence admitted against his codefendants. He argues "negative information" about Steagall's "bounty hunting business" and evidence that police officers found stolen property at Steagall's residence undermined his defense.

¶18 "'Rub-off' occurs when the jury's unfavorable impression of the defendant against whom the evidence is properly admitted influences

---

4 The State did not introduce any of the codefendants' statements to law enforcement officials during its case-in-chief. In rebuttal, the State presented a portion of Harden's police interview statements from March 5, 2013, in which he claimed he "went to hang out" with a friend at a hotel "all night" on March 3, 2013, but none of those statements referenced Steagall or Childress.

the way the jurors view the other defendant." *State v. Tucker*, 231 Ariz. 125, 142, ¶ 42 (App. 2012) (internal quotation omitted). The "mere introduction of evidence concerning one defendant's conduct that does not involve the other defendant generally does not constitute sufficient grounds for severance," however. *Id*. Indeed, a court need not sever a defendant's trial "based on rub-off" if it determines, under the circumstances, that jurors are able to separate the evidence relevant to each defendant and render "a fair and impartial verdict as to each." *Id*. (internal quotation omitted).

**¶19**      The State presented evidence that police officers found some of the victims' stolen property at Steagall's apartment to prove the codefendants, acting as accomplices, committed the charged offenses. Given the State's theory of accomplice liability, there was no danger that this evidence may have an unintended "rub-off effect" on Harden because the State affirmatively, and properly, used the evidence to prove his guilt. Moreover, to the extent evidence that Steagall attempted to work as a bounty hunter may have potentially cast Harden in a negative light, the record reflects that the trial court properly instructed jurors to separately weigh and consider the evidence against each defendant, which "effectively cured any potential prejudice due to rub-off." *Id*. at ¶ 43; *see also Murray*, 184 Ariz. at 25 (A properly instructed jury "is presumed to have considered the evidence against each defendant separately."). Therefore, the trial court did not abuse its discretion by denying Harden's motion to sever.

## II.      Sufficiency of the Evidence

**¶20**      Harden argues the State presented insufficient evidence he was present when the crimes occurred. We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). In evaluating the sufficiency of the evidence, we "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9.

**¶21**      At trial, N.V. testified he did not recognize any of the codefendants as the armed intruders who invaded his home on March 3, 2013. Nonetheless, the record reflects that shortly after the events unfolded on the night in question, N.V. immediately identified Harden as the man

who pointed a gun at him when presented with a photo lineup.  Likewise, D.Z. immediately recognized Harden as one of the armed intruders when he viewed photo lineups that evening, and he identified Harden in court with "100 percent" certainty.  Given these eyewitness identifications, as well as the camouflage pants, badge, and pictures of tactical gear seized from Harden's apartment — which matched the victims' descriptions — the State presented sufficient evidence that Harden participated in the home invasion and committed the crimes charged.[5]

**CONCLUSION**

¶22　　　　We affirm Harden's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[5]　　　　To the extent Harden argues his alibi evidence "created enough reasonable doubt" that no reasonable jury could convict him, we note that Harden's statements to police on March 5, 2013, claiming he was at a hotel "all night" on March 3, 2013, contradicted his alibi witness who testified Harden was at home the entire evening.  Moreover, on cross-examination, Harden's alibi witness acknowledged that he may have misremembered which weekend he spent at Harden's apartment.