HOWE, Judge:
¶ 1 We address in this opinion whether sufficient evidence supports Robert James Dodd's conviction and sentence for aggravated assault causing serious physical injury. Because our resolution of only this issue from Dodd's appeal merits publication, we have addressed Dodd's other arguments in a separate unpublished memorandum decision issued simultaneously with this opinion. See Ariz. R. Sup. Ct. 111(h) ; Ariz. R. Crim. P. 31.26.
¶ 2 Dodd argues that the State's evidence was insufficient in two respects: first, the State failed to show whether the victim was injured in the collision he admittedly caused, or in the deliberate collision the police used in apprehending him; second, the State failed *957 to show that the victim's injury constituted a "serious physical injury" under A.R.S. § 13-105(39) because no evidence was presented showing the extent and duration of the injury.
¶ 3 Neither argument has merit. The State need not prove which specific collision caused a victim to sustain an injury during a police pursuit, only that the defendant's actions were the legal and proximate cause of the injury. And although the State did not present any specific evidence about the extent and duration of the injury, evidence about its severity-a broken and dislocated femur and hip socket that required orthopedic surgery at a high-level trauma center-was sufficient for the jurors to conclude that it was extensive enough and would endure long enough to constitute a "serious physical injury." Accordingly, for the following reasons and those set forth in the accompanying unpublished memorandum decision, we affirm Dodd's convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 4 In April 2014, Dodd engaged Arizona Department of Public Safety ("DPS") officers in a high-speed pursuit in Kingman when the officers tried to stop him pursuant to an arrest warrant. Over the course of the chase, Dodd drove erratically, driving into oncoming traffic, throwing objects out of his car, and driving up to 50 miles over the posted speed limits. Roughly seven minutes after the pursuit began, Dodd ran through a stop sign and struck a car that had the right-of-way, killing its driver. After the collision, Dodd's car came to a stop. One DPS officer who had followed Dodd since the beginning of the chase parked his car and ran across the intersection toward Dodd's car with his weapon drawn. As the officer approached, Dodd got out of the car. Believing that Dodd might attempt to flee, another DPS officer who had joined the pursuit deliberately hit the back of Dodd's car with his police cruiser, pushing Dodd's car into him and causing him to fall to the ground.
¶ 5 After taking Dodd into custody, the officer discovered that Dodd had a passenger, B.B., who had gotten out of the car and was lying on the ground next to the car, bleeding from her mouth and crying. B.B. was initially transported to the local hospital to treat her injuries. After the treating physician examined her, she was transported to a facility that could treat a higher level of trauma. The State charged Dodd with, among several other charges, two counts of aggravated assault predicated on B.B.'s injuries: intentionally, knowingly, or recklessly causing serious physical injury to B.B. in violation of A.R.S. §§ 13-1204(A)(1) and -1203(A)(1) and intentionally, knowingly, or recklessly causing physical injury to B.B. with a deadly weapon or dangerous instrument in violation of A.R.S. §§ 13-1204(A)(2) and -1203(A)(1), both class 3 felonies.
¶ 6 At trial, the State called the treating physician that examined B.B. at the local hospital. He testified that B.B. not only had multiple rib fractures and a pulmonary contusion, but also a fracture of her femur and her acetabulum-the joint socket where the femur connects with the pelvis. The fractures of her femur and acetabulum had also caused her femur to become dislocated from her pelvis. The injuries to her hip and leg were so severe that she could not be adequately treated at Kingman Regional Medical Center, but had to be moved to a higher-level trauma center that had an orthopedic surgeon. Surgery was necessary to repair the bones and put the femur back into place in the joint socket.
¶ 7 After a four-day trial, the jury convicted Dodd on all counts, including aggravated assault causing serious physical injury to B.B. The trial court sentenced Dodd to the presumptive term of 11.25 years' imprisonment on that conviction. Dodd timely appealed.
DISCUSSION
¶ 8 Dodd argues that insufficient evidence supports his convictions for aggravated assault against B.B. Specifically, he claims that insufficient evidence shows that his actions, rather than those of the DPS officer hitting his car, caused B.B.'s injuries and that B.B. suffered "serious physical injury" as defined by A.R.S. § 13-105(39). We review a claim of insufficient evidence de novo.
*958 State v. West , 226 Ariz. 559, 562 ¶ 15, 250 P.3d 1188, 1191 (2011). In doing so, we view the evidence in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against the defendant. State v. Greene , 192 Ariz. 431, 436 ¶ 12, 967 P.2d 106, 111 (1998). Additionally, we test the evidence "against the statutorily required elements of the offense," State v. Pena , 209 Ariz. 503, 505 ¶ 8, 104 P.3d 873, 875 (App. 2005), and "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact," State v. Borquez , 232 Ariz. 484, 487 ¶ 9, 307 P.3d 51, 54 (App. 2013). We will not disturb the jury's verdict unless no probative facts support it. State v. Felix , 237 Ariz. 280, 289 ¶ 30, 349 P.3d 1117, 1126 (App. 2015). The evidence must be substantial enough for a reasonable person to determine that it supports a guilty verdict beyond a reasonable doubt. State v. Stroud , 209 Ariz. 410, 411-12 ¶ 6, 103 P.3d 912, 913-14 (2005). The State presented sufficient evidence that Dodd's actions were the legal and proximate cause of B.B.'s injuries and that the injuries were "serious physical injuries" as defined by statute. We therefore affirm Dodd's conviction for aggravated assault.
1. Cause
¶ 9 Dodd first argues that insufficient evidence shows that he caused B.B.'s injuries. Dodd does not contest that B.B. sustained injuries during the police pursuit that ultimately ended with his arrest. But because B.B. did not testify at trial and no admitted medical evidence linked any specific injury B.B. sustained to a particular collision that occurred during the pursuit, Dodd contends that the record does not foreclose the possibility that B.B. sustained some or all of her injuries when the DPS officer struck the car to prevent Dodd's continuing flight.
¶ 10 Contrary to Dodd's argument, however, the State did not have to prove that B.B. sustained her injuries when Dodd drove into other cars. Instead, the State needed to show only that Dodd's conduct "proximately and in fact" caused B.B.'s injuries. State v. Marty , 166 Ariz. 233, 236, 801 P.2d 468, 471 (App. 1990) ("In Arizona, both 'but for' causation and proximate cause must be established in a criminal case."). To establish legal cause, the State had to present evidence that "but for" Dodd's conduct, B.B. would not have been injured. Id. ; see also A.R.S. § 13-203 (explaining that conduct is the cause of a result when the "result in question" would not have occurred "but for the conduct" at issue). To establish proximate cause, the State needed to present evidence showing "that the difference between the result intended" by Dodd and "the harm actually suffered" by B.B. was "not so extraordinary that it would be unfair to hold" Dodd responsible for the result. See Marty , 166 Ariz. at 237, 801 P.2d at 472. Under Arizona law, a proximate cause may be interrupted only when "another cause with which the defendant was in no way connected intervenes, and but for which" the injuries would not have occurred. Id.
¶ 11 The record here reflects that Dodd's actions were the legal and proximate cause of B.B.'s injuries. First, the record clearly shows that "but for" Dodd's conduct, B.B. would not have been injured. Dodd's high-speed, erratic driving directly caused two collisions, including one so severe that it killed the driver of the other car. Equally important, the record also reflects that the DPS officer purposefully struck Dodd's car with his police cruiser for the sole purpose of preventing Dodd's continued flight. Therefore, absent Dodd's illegal activity, none of the collisions would have occurred and the record sufficiently shows that Dodd in fact caused B.B.'s injuries regardless when she sustained them during the police pursuit. Second, the record shows that Dodd's actions were the proximate cause of B.B.'s injuries. Dodd's erratic and illegal conduct caused multiple collisions, and therefore the risk of harm from his behavior included injuries to a passenger. Thus, holding Dodd responsible for the resulting injury to his passenger is not so extraordinary that it would be unfair.
¶ 12 Dodd suggests that the DPS officer's intentional collision with his car was an intervening cause for B.B.'s injuries. An intervening cause, however, is a superseding event-one that relieves criminal liability-only when unforeseeable, abnormal, or extraordinary.
*959 State v. Bass , 198 Ariz. 571, 575-76 ¶¶ 11-13, 12 P.3d 796 ; see also State v. Vandever , 211 Ariz. 206, 208 ¶ 8, 119 P.3d 473, 475 (App. 2005) (explaining that a third-party driver's conduct was not an intervening event when the collision "was clearly a foreseeable event within the scope of the risk" created by the defendant's illegal conduct). Because Dodd's illegal conduct endangered numerous lives, that police officers might use force, even deadly force, to apprehend him was foreseeable. See United States v. Pineda-Doval , 614 F.3d 1019, 1029 (9th Cir. 2010) (explaining that a police officer's conduct in pursuing a fleeing perpetrator, even when such conduct causes the death of a third party, is not deemed "so unusual, abnormal or extraordinary as to constitute a superseding cause"). Therefore, the record sufficiently established that Dodd's actions were the proximate cause of B.B.'s injuries.
2. Serious Physical Injury
¶ 13 Dodd argues next that insufficient evidence supports his aggravated assault conviction because the State failed to demonstrate that any of B.B.'s injuries constituted "serious physical injury" as defined by statute. As relevant here, a person commits aggravated assault if he or she intentionally, knowingly, or recklessly causes serious physical injury to another. A.R.S. § 13-1204(A)(1). "Serious physical injury" is statutorily defined to include any physical injury "that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39).
¶ 14 B.B.'s injuries meet this definition. Her injuries were caused by a collision so forceful that it killed the driver of the other car. The collision not only broke her ribs and bruised her lung, but also broke her femur, the largest bone in the human body, and her hip socket, dislocating the femur from the pelvis. These fractures were so severe that B.B. could not be treated at the regional medical center, but had to be transported to a hospital with a higher level of trauma care so that an orthopedic surgeon could repair the fractures and put the femur back into the joint socket. This evidence shows at the very least that B.B.'s injuries caused a "serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb," as A.R.S. § 13-105(39) requires.
¶ 15 In arguing that multiple rib fractures, a bruised lung, and a broken and dislocated femur and hip socket do not constitute "serious physical injuries" under the statute, Dodd relies on a decision from another panel of this Court, State v. George , which held that being shot through the neck, with an exit wound under the armpit, was not a "serious physical injury" under the statute. 206 Ariz. 436, 440 ¶ 4, 79 P.3d 1050, 1054 (App. 2003). Although the victim suffered a significant loss of blood and lost sensation, strength, and muscle control of her arm, the George panel found this evidence wanting because the treating physician "refused to speculate" whether the impairment to the victim's arm would be temporary, protracted, or permanent. Id. Without such testimony, the George panel was reluctant to find that such a gunshot wound was more than merely a "temporary but substantial" injury, which would justify finding only a lesser class of aggravated assault. Id. at 441 ¶ 9, 79 P.3d at 1055.
¶ 16 Although George 's conclusion that a gunshot wound that penetrates the neck and exits through the armpit is not necessarily a "serious physical injury" is extraordinary-and not one we would make-that conclusion does not affect our analysis. The basis of George 's conclusion is that the State had failed to present evidence about "the extent and duration" of the injury. Id. at 440 ¶ 4, 79 P.3d at 1054. George noted that a "protracted impairment" of a limb must be more than "the healing time of a normal fracture." Id. at 441 ¶ 9, 79 P.3d at 1055. Here, the evidence showed that the broken and dislocated femur and hip socket were not "normal" fractures, but ones that required orthopedic surgery at a high-level trauma center. The jurors could use their collective common sense to decide from this evidence that the injuries were so extensive and would require such a long time to heal that they satisfied the definition of "serious physical injury" in A.R.S. § 13-105(39). See *960 State v. Perry , 5 Ariz. App. 315, 317-18, 426 P.2d 415 (1967) (standard of "serious bodily injury" is to be applied by the jurors as term of ordinary significance).
¶ 17 The State presented sufficient evidence that Dodd's actions were the legal and proximate cause of B.B.'s injuries and that those injuries constituted "serious physical injuries" to support Dodd's conviction for aggravated assault by causing serious physical injury.
CONCLUSION
¶ 18 For the foregoing reasons and those addressed in the accompanying unpublished memorandum decision, we affirm Dodd's convictions and sentences.