NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

TAMIKO JERMAINE MOORE, *Appellant.*

No. 1 CA-CR 20-0474
FILED 10-19-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2013-002730-005
The Honorable Warren J. Granville, Judge (Retired)
The Honorable Rosa Mroz, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Samuel A. Thumma joined.

---

**P O R T L E Y**, Judge:

**¶1**        Tamiko Jermaine Moore appeals his convictions and sentences for first degree felony murder and armed robbery. Moore challenges the sufficiency of the evidence supporting his convictions and contends the trial court erred by denying his motion for mistrial. Because Moore has shown no error, we affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

**¶2**        At approximately 8:30 p.m. on a December evening in 2012, Storm Collins and Anthony Whitmore shot and killed D.M. as they robbed him in a Phoenix adult cabaret parking lot. Earlier that evening, Collins, Whitmore, Moore, Rico Conner, and C.K.—a dancer at the cabaret—texted and called each other to coordinate the robbery.

**¶3**        The State charged the five defendants with various offenses stemming from the murder. Moore was charged with first degree murder, conspiracy to commit armed robbery, and armed robbery. Moore, Conner, and Collins were tried together, and the jury acquitted Moore of the conspiracy charge, but found him guilty of the other two offenses.[2] For the

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]        This court affirmed Conner's and Collins' convictions and sentences. *State v. Conner*, 249 Ariz. 121 (App. 2020), *abrogated in part on other grounds by State v. Smith*, 250 Ariz. 69, 80-81, ¶¶ 21-22 (2020); *State v. Collins*, 1 CA-CR 19-0201, 2020 WL 5523189 (Ariz. App. Sept. 15, 2020) (mem. decision). Whitmore was tried separately, and his convictions and sentences were affirmed on appeal as modified. *State v. Whitmore*, 1 CA-CR 16-0276, 2017 WL 3141164 (Ariz. App. July 25, 2017) (mem. decision). C.K. resolved the charges against her with a plea agreement.

murder conviction, Moore was sentenced to life in prison with the possibility of release after 25 years, and to a concurrent 10.5-year prison term for the armed robbery conviction. This court has jurisdiction over Moore's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).[3]

## ANALYSIS

*I.     Substantial Evidence Supports Moore's Convictions.*

¶4          Moore claims that no direct or physical evidence tied him to the crimes. But such evidence is not necessary for a lawful conviction; circumstantial evidence alone is "sufficient to support a conviction as long as reasonable jurors could find it permits the inference of the defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶ 11 (App. 2013) (citation omitted).

¶5          "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987) (citation omitted). In evaluating the sufficiency of the evidence, we compare the trial evidence "against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). "We do 'not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact.'" *Borquez*, 232 Ariz. at 487, ¶ 9 (citation omitted).

> A person commits first degree murder if . . . [a]cting either alone or with one or more other persons the person commits or attempts to commit . . . robbery under § 13–1902, 13–1903 or 13–1904 . . . and, in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person causes the death of any person.

A.R.S. § 13–1105(A)(2).

¶6          "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13-1902(A). Robbery is

---

[3]          We refer to the current statutes and rules unless otherwise indicated.

elevated to armed robbery when the robber or an accomplice is armed with, uses, or threatens to use a deadly weapon. A.R.S. § 13-1904(A)(1)-(2).

¶7         A person is criminally liable for the conduct of another if the person is an "accomplice" in the commission of the offense, including "any offense that is a natural and probable or reasonably foreseeable consequence of the offense for which the person was an accomplice." A.R.S. § 13-303(A)(3). An "accomplice" is a person "who with the intent to promote or facilitate the commission of an offense . . . [a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense [or p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13-301(2)-(3); *accord* A.R.S. § 13-303(B)(2).

¶8         The evidence here, viewed in the light most favorable to sustaining the convictions, *State v. Guerra*, 161 Ariz. 289, 293 (1989), and drawing all reasonable inferences in support thereof, *State v. Fulminante*, 193 Ariz. 485, 494, ¶ 27 (1999), is as follows: At approximately 6:00 p.m. on that December evening in 2012, Collins and Whitmore sent text messages to Moore indicating the victim was in a cabaret parking lot with "[$]7 to 10k right now." Three minutes later, Moore, who, like Collins and Whitmore, did not have access to a vehicle, texted Conner: "Cuz if you mobile right now, [the victim] got 10 [thousand dollars] right now cuz." According to cell phone records and the State's expert testimony, Conner's cell phone then began "moving" toward Moore's house at approximately 7:00 p.m. before both Conner's and Moore's cell phones "ultimately end[ed] up . . . near the crime scene" a few minutes before the murder.

¶9         Whitmore's roommate, Q.F., testified that Whitmore and Collins were at their apartment on the afternoon of the murder, and that neither Whitmore nor Collins had a vehicle or a gun. Q.F. also testified that Whitmore and Collins left the apartment for approximately 45 minutes before returning later that night.[4] When C.K. testified about the factual basis for her plea agreement, she affirmed she had "firsthand knowledge" that "Moore participated [in the robbery and shooting] by providing vehicles and guns."

---

[4]     The trial evidence indicated that Whitmore and Q.F. lived "[o]n 35th and Osborn," and the cabaret was located "at 2802 North 35th Avenue just south of Thomas." Based on maps admitted at trial, if Moore and Connor drove directly from Moore's house to the cabaret, they would have driven past Whitmore's and Q.F.'s apartment.

¶10        Based on the trial evidence, the jury could reasonably infer that Moore, knowing Collins and Whitmore intended to rob the victim, coordinated their transportation to and/or from the cabaret and provided them with the handguns to facilitate the robbery that ultimately resulted in the victim's murder.  Accordingly, substantial evidence supports Moore's convictions as an accomplice.

        *II.        The Trial Court Properly Denied Moore's Motion for Mistrial.*

¶11        Moore argues the trial court should have granted his request for a mistrial after Collins unexpectedly blurted out in the jury's presence: "Your Honor, I want to say on the record Tamiko Moore was convicted of armed robbery.  He had a mistrial in this case already."

¶12        We review the denial of a motion for mistrial for an abuse of discretion.  *State v. Miller*, 234 Ariz. 31, 40, ¶ 23 (2013).  "When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court . . . [to] decide if some remedy short of mistrial will cure the error."  *State v. Adamson*, 136 Ariz. 250, 262 (1983) (citation omitted).

¶13        Immediately after Collins' outburst, the trial court ordered the jurors to the jury room.  The court proceeded to question the jurors collectively and then individually about what they heard Collins say and whether the comment would impact their deliberations.  Recognizing that Collins' statement was not evidence, all jurors indicated they would not consider it when determining the defendants' guilt.  Based on this record, and in light of the trial court's superior position to determine the jurors' credibility, we discern no error in denying Moore's request for a mistrial. *See State v. Koch*, 138 Ariz. 99, 101 (1983) ("[T]he trial judge is always in the best position to determine whether a particular incident calls for a mistrial. The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial." (citations omitted)).

## CONCLUSION

¶14      Moore's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA