NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PERRY JEROME BRYARS, *Appellant*.

No. 1 CA-CR 22-0135
FILED 5-16-2023

Appeal from the Superior Court in Maricopa County
No.  CR2019-101287-001
The Honorable Rosa Mroz, Judge, (deceased)
The Honorable Jacki Ireland, Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1        Defendant Perry Jerome Bryars appeals his convictions and sentences for attempted arson, attempted sexual assault, kidnapping, four counts of aggravated assault, and six counts of felony endangerment. Because Bryars fails to show reversible error, the convictions and sentences are affirmed.

### FACTUAL[1] AND PROCEDURAL BACKGROUND

¶2        Bryars' wife, M.Y.,[2] had filed for divorce and obtained an order of protection against Bryars when they attempted to reconcile in December 2018. The next month, after reconciliation efforts failed, M.Y. awoke one evening in her bed in Buckeye, Arizona, and saw Bryars standing over her. Bryars threatened to kill M.Y. with a knife and prevented her from leaving. At one point, Bryars took off his and M.Y.'s clothes, got on top of her, grabbed her "down there," and rubbed his penis against her while "tracing" and "poking" her body with the knife. Bryars strangled M.Y. "at least three or four times"—twice until she almost lost consciousness—cut her neck and slapped her face. He told M.Y. "we're going to die together." Eventually, M.Y. was able to escape when Bryars became distracted.

¶3        M.Y. returned to the home about 30 minutes later but did not go inside; she spoke with Bryars through a window of the home. Bryars told M.Y. the house was "going to blow in five minutes," and asked whether she smelled "gas." M.Y. called 9-1-1 and told the operator that Bryars "said he was ready to die and as soon as you guys get here, he is going to blow up the house." Buckeye Police Officer E.C. soon arrived, and

---

[1]        The evidence and all reasonable inferences are viewed in the light most favorable to sustaining the verdicts. *State v. Fuentes*, 247 Ariz. 516, 520, ¶ 2 (App. 2019).

[2]        We use initials to protect the victims' identities.

Bryars was in his truck parked in the driveway. After a brief standoff, Officer E.C. and other officers were able to detain Bryars.

¶4 Meanwhile, a hazmat specialist with the Buckeye Fire Department arrived and found natural gas was seeping out from the "closed up" home. He turned off the main gas line to the home and evacuated neighbors from the area.

¶5 Immediately upon opening the front door of the home, the specialist extinguished a burning candle on the floor. He proceeded through the house, and a "viscous material" on the floor by the candle caused him to slip. The specialist noted an empty gasoline can and bleach bottles scattered around the house, which raised "red flags" because gasoline combined with bleach is dangerously flammable. The specialist also saw that the doorbell wires were disconnected, which he later testified was an attempt to prevent an "early" explosion before the house filled with gas.[3] He discovered a "gas hookup" in the kitchen was disconnected and turned on, and the gas line to the water heater in the garage was disconnected. The specialist measured a gas concentration in the air that, although elevated, was insufficient to ignite.

¶6 After arresting Bryars, Officer E.C. interviewed him at the police station. Bryars explained that he had "some background in explosives," and he admitted that he cut the doorbell wires and lit the candle found burning on the floor.

¶7 The State charged Bryars with one count of attempted arson of an occupied structure, one count of sexual assault, two counts of kidnapping, four counts of aggravated assault, and six counts of felony endangerment. Each endangerment count listed as a victim M.Y., Officer E.C., or one of the four other police officers who responded to the scene and was present when Bryars was arrested.

¶8 At trial, the superior court granted Bryars' motion for judgment of acquittal as to the sexual assault charge but allowed the State to proceed with an amended charge of attempted sexual assault. The court

---

[3] The hazmat specialist explained at trial that natural gas is "lighter than air," and it therefore accumulates from the top of a closed structure downward. If the only ignition source is near the ground level, the concentration of gas becomes so great by the time the gas ignites that a "catastrophic" explosion results.

denied Bryars' motion for judgment of acquittal as to all other charges. The court later dismissed one of the kidnapping charges on the State's motion.

¶9 The jury found Bryars guilty on all counts, additionally finding that seven counts (attempted sexual assault, kidnapping, aggravated assault, and one count of endangerment) were domestic violence offenses. The jury further found that the kidnapping, attempted sexual assault, attempted arson of an occupied structure, and one of the aggravated assault convictions were dangerous offenses. The court then imposed concurrent presumptive sentences ranging from one year to ten and a half years for all counts except one and applied the appropriate presentence incarceration credit. On the arson count, Bryars was sentenced to a consecutive presumptive sentence of seven and a half years with no credit. Bryars timely appealed. This Court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### I.     Sufficiency of Evidence:  Endangerment

¶10 Bryars argues the court erred by denying his motion for a judgment of acquittal on the endangerment counts, and that insufficient evidence supported those convictions. Although Bryars argues these issues separately, the analysis under both is the same. A judgment of acquittal is only appropriate if there is "no substantial evidence to support a conviction." Ariz. R. Crim. P. ("Rule") 20(a)(1); *State v. Fulminante*, 193 Ariz. 485, 493, ¶ 24 (1999). Likewise, review of the sufficiency of evidence underlying a conviction is limited to determining "whether substantial evidence supports the verdict." *State v. Sharma*, 216 Ariz. 292, 294, ¶ 7 (App. 2007). Therefore, these arguments are reviewed together.

¶11 A claim of insufficient evidence is reviewed *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). The denial of a Rule 20 motion for a judgment of acquittal or a jury's guilty verdict will be affirmed unless "there is a complete absence of probative facts to support [the jury's] conclusion." *State v. Johnson*, 215 Ariz. 28, 29, ¶ 2 (App. 2007); *State v. Miles*, 211 Ariz. 475, 481, ¶ 23 (App. 2005). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (internal quotation marks and citation omitted). In evaluating the sufficiency of the evidence, we assess the evidence "against the statutorily

required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). The Court does not "reweigh the evidence to decide if it would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9 (internal quotation marks and citation omitted).

**¶12** As charged here, "[a] person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13-1201(A). "'Recklessly' means . . . a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." A.R.S. § 13-105(10)(c).

**¶13** Bryars argues that, because the evidence failed to establish the gas had reached a sufficient concentration in the house to ignite and explode, the victims were not in *actual* substantial risk of imminent death. *See State v. Morgan*, 128 Ariz. 362, 367 (App. 1981) ("[O]ne of the required elements of endangerment is that the victim must be placed in actual substantial risk of imminent death or physical injury."). But the State was not required to show that the gas concentration reached a combustible level because, had that level been attained, the lit candle would have ignited the gas, causing a large explosion and potentially killing the victims. Requiring the State to prove a particular level was attained would run counter to the endangerment statute's purpose. *See State v. Dominguez*, 236 Ariz. 226, 229, ¶ 5 (App. 2014) (noting that, compared to homicide, the felony endangerment statute "criminalizes conduct posing a substantial risk rather than creating an observable result.").

**¶14** Here, the hazmat specialist testified that gas would ignite at a five percent concentration level and that, 45 minutes *after* gas began dissipating and *after* he turned off the gas main to the house, the gas was between one and two percent concentration. But the concentration levels are secondary. Bryars took all the necessary steps to explode the house at the time—opening all the gas pipes to fill the house and lighting a candle near the front door to ensure ignition as public safety personnel were arriving—not at some unknown time in the future. The evidence showed that the endangerment victims were near the house just before the specialist turned off the gas main. The jury could therefore reasonably determine the victims were in actual substantial risk of being killed by an explosion that

testimony established would have been "catastrophic."[4] *Cf. State v. Doss*, 192 Ariz. 408, 412, ¶ 13 (App. 1998) (remanding for new trial on endangerment counts that were based on defendant's firing gun into a house where record was "ambiguous" as to location of victims in house). Accordingly, sufficient evidence supported the felony convictions.

## II.    Designation of Attempted Sexual Assault as a Domestic Violence Offense

¶15    Bryars argues that attempted sexual assault does not qualify for designation as a domestic violence ("DV") offense under A.R.S. § 13-3601. Bryars did not raise this issue at trial, meaning he must demonstrate fundamental error. Thus, to show reversible error, Bryars must affirmatively establish that whatever error occurred was prejudicial or otherwise so egregious as to deny him a fair trial. *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018). He fails to do so.

¶16    Bryars does not explain how the DV designation for the attempted sexual assault conviction adversely affected his sentencing. Instead, he argues: "Without the error, [there] would not [be] a domestic violence conviction for Count 4. With each conviction for a domestic violence offense, the risk to a person's liberty increases." Thus, Bryars recognizes that he was convicted of other DV offenses in this case. And although Bryars claims the DV designation for Count 4 alone poses a risk to his liberty, he provides no supporting authority and does not explain the risk. Bryars' vague reference to a potential future risk of prejudice is insufficient to satisfy his burden under fundamental error review. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (defendant "must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry his burden" under fundamental error review).

## III.    Sentencing

¶17    The trial court imposed presumptive sentences on all counts. In doing so, the court noted the number of victims, the "serious danger" posed to the victims and the community, and the "serious emotional impact" on M.Y. "balance[d] . . . out" the mitigating factors regarding

---

[4]    The trial court properly instructed the jury that endangerment requires proof that Bryars' conduct did "in fact" create a substantial risk of imminent death. Rev. Ariz. Jury Instr. Statutory Criminal 12.01 (5th ed. 2019).

Bryars' lack of prior felony convictions, his military service, and his possible "substance abuse issue."

**¶18**        Bryars argues the trial court fundamentally erred by using aggravating factors not found by the jury to "negate" the mitigating factors. But the requirement that a jury must find an aggravating factor only becomes an issue when a court imposes an aggravated sentence, not presumptive sentences as here. *See State v. Johnson*, 210 Ariz. 438¶¶ 12–13 (App. 2005) (jury findings only required for sentence greater than presumptive to be imposed).

**¶19**        Bryars contends that his enhanced presumptive sentences did not comply with *Alleyne*. *See Alleyne v. United States*, 570 U.S. 99 (2013). In that case, the United States Supreme Court held that "the fact triggering the mandatory minimum sentence . . . must be submitted to the jury." *Id.* at 113. But Bryars was not sentenced to a mandatory minimum sentence. Rather, Bryars received a presumptive sentence under A.R.S. § 13-704, which provides enhanced sentencing ranges for dangerous offenders. And the jury made the finding of dangerousness that triggered application of § 13-704. Bryars does not challenge that finding, and the record supports it.

**¶20**        The trial court did not err in imposing the sentences here. *See State v. Cazares*, 205 Ariz. 425, 427, ¶¶ 6, 8 (App. 2003) (sentencing decisions are within trial court's discretion). Accordingly, Bryars has shown no fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21 ("[T]he first step in fundamental error review is determining whether trial error exists.").

## CONCLUSION

**¶21**        Bryars' convictions and sentences are affirmed.

