IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

STATE OF ARIZONA, *Appellee,*

*v.*

ENRIQUE FRANCO AGUIRRE, *Appellant.*

No. 1 CA-CR 22-0057
FILED 4-4-2023

———————————————

Appeal from the Superior Court in Maricopa County
No.  CR2019-005386-001
The Honorable Jay R. Adleman, Judge

**REVERSED AND REMANDED**

———————————————

COUNSEL

Ramos Law Firm, Scottsdale
By Paul A. Ramos
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith,
Michael Woodburn (certified limited practice student)
*Counsel for Appellee*

**OPINION**

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

**C A M P B E L L**, Judge:

¶1      Enrique Franco Aguirre appeals his conviction and sentence for discharging a firearm at a nonresidential structure, arguing insufficient evidence supports his conviction. We hold that a conviction for discharging a firearm at a nonresidential structure requires evidence that a defendant "knowingly" shot "at" a residential structure, as opposed to firing at a person and inadvertently striking a structure. *See* A.R.S. § 13-1211(B). Because the evidence established only that Aguirre knowingly fired his weapon at a person and recklessly or accidentally hit the structure, we reverse and remand.

**BACKGROUND[1]**

¶2      In 2018, after engaging in a brief physical altercation outside a nightclub, Aguirre fired multiple pistol shots at John,[2] striking him several times. Two stray bullets hit the nightclub: one passing through an open window and striking a metal tripod inside, the other striking the building's exterior and damaging the block wall. The State charged Aguirre with one count of discharging a firearm at a nonresidential structure, a class 3 felony (count one); four counts of aggravated assault, class 3 felonies (counts two through five); and three counts of endangerment, class 6 felonies (counts six through eight). Aguirre claimed he acted in self-defense. *See* A.R.S. § 13-405(A) ("A person is justified in threatening or using deadly physical force against another . . . [w]hen and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force.").

¶3      At trial, John testified that he regularly frequented the nightclub and had loaned money to Aguirre, who worked as a security

---

[1]      We view the evidence in the light most favorable to upholding Aguirre's conviction and resolve all reasonable inferences against him. *See State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004).

[2]      We use a pseudonym to protect the non-party's identity.

guard. When John left the nightclub on the night of the shooting, he found Aguirre waiting for him in the parking lot. According to John, Aguirre said he would not repay the loan. To avoid a confrontation, John responded that "it's not the place to talk about [it]." John testified that Aguirre punched him, and John then pushed Aguirre. As John walked toward his vehicle, he looked back and saw that Aguirre had a gun pointed "at [his] head." Quickly grabbing a gun from his truck, John aimed it at Aguirre, who fired his weapon at John while running toward him. John asserted that, although he was armed at the time, he never returned fire.

¶4　　　　Following the State's case-in-chief, the superior court denied Aguirre's motion for judgment of acquittal under Arizona Rule of Criminal Procedure 20. Aguirre then testified that he shot John in self-defense. Explaining he knew John as a regular customer at the nightclub, Aguirre described him as a violent, "bad man," and a "gun guy" who was "associated with the cartel." Denying that he had borrowed money from John, Aguirre testified that he confronted him that night to address threats John had made on a previous evening when Aguirre asked him to remove his firearm before going into the club.

¶5　　　　When questioned about their physical altercation, Aguirre testified that John instigated it, orally threatening him and shoving him before he punched back in retaliation. Acknowledging that he was the first to brandish a weapon, Aguirre explained that he believed John intended to retrieve a gun when he walked to his vehicle. Aguirre testified that he pointed his weapon at John while repeatedly warning him "not to pull out his gun." Contrary to John's testimony, Aguirre recounted that he did not shoot until after John grabbed his gun, turned toward him, and began firing.

¶6　　　　A jury acquitted Aguirre on all of the aggravated assault charges but found him guilty of discharging a firearm at a nonresidential structure. The jurors could not reach verdicts on the endangerment counts. The superior court sentenced Aguirre to a five-year term of imprisonment. Aguirre timely appealed.

## DISCUSSION

¶7　　　　Aguirre challenges the sufficiency of the evidence to support his conviction. He asserts the State failed to show he targeted his shots "at" the nightclub.

¶8　　　　We review a claim of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence on which a

reasonable jury can convict may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013). "In determining whether substantial evidence exists, we view the facts in the light most favorable to sustaining the jury verdict and resolve all inferences against [the defendant]." *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005). In evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact[,]" *Borquez*, 232 Ariz. at 487, ¶ 9 (internal quotation omitted).

¶9        We also interpret statutes de novo. *State v. Neese*, 239 Ariz. 84, 86, ¶ 8 (App. 2016). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use." *S. Ariz. Home Builders Ass'n v. Town of Marana*, ___ Ariz. ___, ___, ¶ 31, 522 P.3d 671, 676 (2023). "We do so neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *Id.*

¶10        Under A.R.S. § 13-1211(B), "[a] person who knowingly discharges a firearm at a nonresidential structure is guilty of a class 3 felony." Aguirre asserts the statute requires that he must have intended to hit the structure when firing his weapon, and no evidence supported his conviction because he "targeted" John, "not the business." In making this claim, Aguirre does not deny that he discharged his firearm or that two bullets struck the nightclub. The State counters that it needed only to prove that Aguirre was aware he was shooting in the direction of the nightclub. In essence, the State argues it is enough if Aguirre knew the structure was there and knew he discharged the weapon in the nightclub's general direction. The two positions require us to interpret whether, under the statute, the State must prove a defendant aimed at the structure to be guilty of the crime.

¶11        "If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears." A.R.S. § 13-202(A). Applying this rule of construction here, A.R.S. § 13-1211(B) prescribes the culpable mental state of knowingly without differentiating between the elements of the offense. Thus, the mens rea of knowingly must be applied to each element of this offense—including the

requirement that the person discharged a firearm "at" a non-residential structure. The court gave the standard instruction for the charged crime: "The crime of discharging a firearm at a nonresidential structure requires proof that the defendant knowingly: 1. Discharged a firearm; 2. At a nonresidential structure." *See* Revised Arizona Jury Instructions ("RAJI") Standard Criminal 12.11 (6th ed. 2022).

**¶12**        While Aguirre does not challenge the jury instructions given, he claims the trial evidence was inadequate to support the assertion that he shot 'at' a nonresidential structure. He challenges his conviction on that basis. Given Aguirre's testimonial admissions, the only question is whether the State presented sufficient evidence that he "knowingly" discharged his firearm "at" the non-residential structure.

**¶13**        We reject the State's interpretation of the statute because it would require us to interpret the statute to apply a reckless mental state to an element of the offense. A.R.S. § 13-105(10)(c) ("'Recklessly' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."). But knowingly engaging in conduct requires more. As statutorily defined, "knowingly" means "with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b).

**¶14**        The statute does not define the word "at," so we apply its common meaning and look to dictionaries for guidance. *See State v. Pena*, 235 Ariz. 277, 279, ¶ 6 (2014). "At" is used "to indicate the goal of an indicated or implied action or motion." *At*, Merriam-Webster's College Dictionary (11th ed. 2018). A "goal" is "the end toward which effort is directed." *Goal*, Merriam-Webster's College Dictionary (11th ed. 2018). A person aims to "indicate the goal" when discharging a firearm. *See Aim*, Merriam-Webster's College Dictionary (11th ed. 2018) (To "aim" is to "direct toward a specified object or goal.").

**¶15**        In the context of discharging a firearm "*at* a nonresidential" structure, the statute requires that the defendant knowingly aimed at the structure—not simply that he was aware of the risk that he may miss his intended target and the projectile might end up lodged in a non-residential structure. *See* A.R.S. § 13-1211(B) (emphasis added). Had the legislature intended this result, the statute would include a mens rea of recklessly engaging in conduct instead of knowingly doing so. This interpretation of

A.R.S. § 13-1211(B) also ensures that the provision "*at* a non-residential structure" is given meaning. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous.").

**¶16**      The State presented evidence that Aguirre knowingly shot at John, and Aguirre admitted as much during his trial testimony. But there is no evidence that Aguirre was aware of or believed he was shooting "at" the nightclub. The State argued in closing: "The defendant knowingly –– does he have any intention –– does he knowingly, was he aware of the risk that when he's shooting, at his intended target, does he know the bullets can go into [the nightclub]? Yes." But the State's argument outlines the mens rea of a reckless act—not a knowing act, which is what the State was required to prove. *See* A.R.S. § 13-105(10)(c).

**¶17**      Without question, two stray bullets struck the nightclub, but that fact, without more, shows only that Aguirre acted recklessly or carelessly by striking the structure. And the doctrine of transferred intent cannot be used to reach the required mens rea either. This doctrine applies to crimes that require a showing of intentional actions. Because the transferred intent doctrine does not apply to crimes that require a "knowingly" mens rea, the fact that Aguirre knowingly shot at John does not transfer his intention so as to prove that he knowingly shot at the nightclub. *See* A.R.S. § 13-203(B), (C).

**¶18**      The State argues that evidence that "Aguirre discharged his firearm from the club parking lot while facing the club" substantially supported the jury's finding that he knowingly discharged his firearm at the nightclub. We disagree. Under the statute, the State needed to prove not that Aguirre was aware he was shooting in the general direction of the nightclub, but that he was aware or believed that he was shooting "at" the nightclub. *See* A.R.S. §§ 13-105(10)(b), -1211(B).

**¶19**      Because Aguirre testified that he knowingly shot at John— thereby admitting all the elements of aggravated assault—the jury must have found he acted in self-defense to acquit him of the aggravated assault charges. *See* A.R.S. §§ 13-1203(A)(1) (defining assault as "intentionally, knowingly or recklessly causing any physical injury to another person"); -1204(A)(2) (defining aggravated assault as committing assault by using "a deadly weapon or dangerous instrument"). If Aguirre discharged his weapon in self-defense at his intended target, John, his poor aim was not evidence of the mens rea necessary to sustain a conviction for knowingly

discharging his firearm "at" a nonresidential structure. *See* A.R.S. § 13-203(B).

**¶20** To be sure, even when discharging a firearm in self-defense, the shooter bears a responsibility to the innocent public. As the State charged in this case, endangerment charges are appropriate if a defendant imperils others while defending himself against the aggression of another. *See* A.R.S. § 13-1201 ("A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.") But in this case, the jury did not convict Aguirre of either count of endangerment charged by the State.

## CONCLUSION

**¶21** Because no evidence supports Aguirre's conviction and sentence, we reverse and remand for further proceedings consistent with this opinion.

