NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DESHAWN ERIC JUNIEL, *Appellant.*

No. 1 CA-CR 24-0113
FILED 01-14-2025

Appeal from the Superior Court in Maricopa County
No. CR2022-142249-001
The Honorable Sunita Cairo, Judge

**AFFIRMED**

COUNSEL

Kenney Law LLC, Florence
By Anthony L. Kenney
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole,
Anthony Caviness (certified limited practice student)
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Andrew M. Jacobs joined.

**B A I L E Y**, Judge:

**¶1**        Deshawn Eric Juniel appeals his convictions and sentences for (1) possession or use of dangerous drugs and (2) possession or use of narcotic drugs.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        We view the facts in the light most favorable to sustaining Juniel's convictions and resolve all reasonable inferences against him.  *See State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).

**¶3**        In November 2022, an undercover police officer saw Juniel ride his bicycle over to a group of about half-a-dozen individuals.  After watching Juniel make a quick hand-to-hand exchange with one individual, the officer called for marked police units to pursue Juniel.

**¶4**        When a patrol car arrived, Juniel began pedaling away.  The patrol officers ordered him to stop, but he continued riding while digging his hands into his front jacket pockets.  The patrol car veered Juniel toward a fence, and he dropped his bicycle and continued to flee on foot.  An officer got out of the patrol car to chase him and saw him drop something next to a van.  Other officers, driving closely behind, saw him bend down next to a parked car and toss something underneath it.

**¶5**        Shortly afterward, the officers caught Juniel and handcuffed him.  As they did so, one officer saw blue pills on the ground next to Juniel and more pills "pouring out" of Juniel's jacket pocket.  The officer picked up the pills, counting a total of eleven.  As the officer proceeded to place Juniel into the patrol car, Juniel claimed he did not have methamphetamine and only had "pills."

**¶6**        Once Juniel was in custody, the officers immediately went back to search where they had seen Juniel drop the items. They found over one hundred of the same blue pills near the van.  Under the parked car, they found a baggie containing a clear crystalline substance.

**¶7**        After transporting Juniel to the police station, one officer placed Juniel in a holding cell, asked him to remove his shoelaces, and briefly left.  When the officer returned, he saw on the floor near Juniel's shoes five additional loose blue pills, which were identical to the pills found earlier on the ground and near the van.

**¶8**         Juniel was charged with Count I, possession or use of dangerous drugs, and Count II, possession or use of narcotic drugs, each a class 4 felony.  At trial, the parties stipulated that the blue pills and crystalline substance found by the officers had been submitted to a crime lab for testing.  They also stipulated that the items had tested positive for fentanyl and methamphetamine, respectively, and each was in a usable quantity and condition.

**¶9**         The jury found Juniel guilty of both counts.  After proceeding to the aggravation phase of trial, the jury also found that the State proved Juniel was on probation when the offenses were committed.  The superior court found that the State proved Juniel had two historical prior felony convictions.  To reduce Juniel's sentencing exposure to that of a category two repetitive offender,[1] the State moved to dismiss one allegation of a historical prior felony conviction.  The superior court granted the State's motion and sentenced Juniel on Count I to a presumptive prison term of 4.5 years, with presentence credit for 37 days' time served.  On Count II, the court placed Juniel on three years' supervised probation, to be served upon his release from prison.

**¶10**         We have jurisdiction over Juniel's timely appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

**¶11**         Juniel argues insufficient evidence supported his convictions. We review whether a conviction is based on sufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  We will not reverse a conviction for insufficient evidence "unless there is no substantial evidence to support the jury's verdict."  *State v. Young*, 223 Ariz. 447, 450, ¶ 12 (App. 2010) (quoting *State v. Scott*, 187 Ariz. 474, 477 (App. 1996)).  "Sufficient evidence on which a reasonable jury can convict may be direct or circumstantial and 'is such proof that reasonable persons could accept as adequate' to 'support a conclusion of defendant's guilt beyond a reasonable doubt.'"  *State v. Aguirre*, 255 Ariz. 89, 92, ¶ 8 (App. 2023) (quoting *State v. Borquez*, 232 Ariz. 484, 487, ¶ 9 (App. 2013)).  We reverse "only where there is a complete absence of probative facts to support the conviction."  *State v. Allen*, 253 Ariz. 306, 341, ¶ 109 (2022) (quoting *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996)).

---

[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 13-703(B), (I).

¶12　　　　We do not reweigh the evidence to decide if we would have reached the same conclusion as the trier of fact; instead, "we test the evidence 'against the statutorily required elements of the offense.'" *Aguirre*, 255 Ariz. at 92, ¶ 8 (quoting *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005)). Thus, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶13　　　　To prove Juniel committed possession or use of a dangerous drug, the State had to show (1) he knowingly possessed or used a dangerous drug, and (2) the substance was in fact a dangerous drug. *See* A.R.S. § 13-3407(A)(1). Likewise, to prove possession or use of a narcotic drug, the State had to show (1) Juniel knowingly possessed or used a narcotic drug, and (2) the substance was in fact a narcotic drug. *See* A.R.S. § 13-3408(A)(1). Methamphetamine is a dangerous drug, A.R.S. § 13-3401(6)(c)(xxxviii), and fentanyl is a narcotic drug, A.R.S. § 13-3401(20)(ww).

¶14　　　　A person acts "knowingly" if, "with respect to conduct or to a circumstance described by a statute defining an offense," they are "aware or believe[]" their "conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b). "Possession" means a voluntary act if a person "knowingly exercised dominion or control over property," A.R.S. § 13-105(35), and it may be actual or constructive, *State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 9 (App. 2013). "Constructive possession exists when the prohibited property 'is found in a place under the defendant's dominion or control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the property.'" *State v. Cox*, 214 Ariz. 518, 520, ¶ 10 (App. 2007) (quoting *State v. Villavicencio*, 108 Ariz. 518, 520 (1972)). "The terms 'dominion' and 'control' carry their ordinary meaning, such that dominion means 'absolute ownership' and control means to 'have power over.'" *State v. Ingram*, 239 Ariz. 228, 233, ¶ 21 (App. 2016) (quoting *Cox*, 214 Ariz. at 520, ¶ 9).

¶15　　　　Juniel points out the undercover officer did not see what was exchanged in the hand-to-hand transaction, and similarly, the patrol officers who chased him did not see what he tossed under the parked car.[2] The substantial evidence presented at trial, however, supported the jury's

---

[2] Juniel does not challenge that the officers saw what he tossed near the van, and we therefore do not address it.

reasonable inference of Juniel's guilt. From the brief hand-to-hand transaction, the jury could have inferred that Juniel made a drug exchange. And because officers found methamphetamine under the car after they saw him toss something there, the jury could reasonably have concluded that he had tossed the methamphetamine.

**¶16**     Juniel also argues his flight from the police "is not necessarily evidence of consciousness of guilt." He suggests alternative explanations for his flight, such as following other fleeing individuals or harboring an unfavorable view of the police. Despite there being alternative explanations, the jury could reasonably have inferred from Juniel's flight that he knowingly possessed the prohibited drugs, and we resolve all reasonable inferences against him. *See Fierro*, 254 Ariz. at 38, ¶ 2.

**¶17**     Juniel further argues no direct evidence showed he knew one of the substances was methamphetamine; in fact, Juniel stated to the arresting officer that he did not have methamphetamine. Juniel's argument goes to both witness credibility and the weight of the evidence, neither of which we redetermine on appeal. *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). And the lack of direct evidence is not dispositive because "[a] conviction may be sustained on circumstantial evidence alone." *State v. Green*, 111 Ariz. 444, 446 (1975) (citing *State v. Chatman*, 109 Ariz. 275, 280 (1973)); *accord Aguirre*, 255 Ariz. at 92, ¶ 8; *Borquez*, 232 Ariz. at 487, ¶ 11. Here, substantial circumstantial evidence supported the knowledge element of Juniel's crimes, including his flight from the police and his discarding items during the chase.

**¶18**     Juniel also points out no DNA or fingerprint evidence linked him to the fentanyl and methamphetamine. But again, Juniel merely highlights a lack of direct evidence. As summarized above, there was substantial circumstantial evidence from which a jury could reasonably conclude he had possessed the drugs.

## CONCLUSION

**¶19**     We affirm Juniel's convictions and sentences.

