NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TERRY LEE WELFENBERG, *Appellant.*

No. 1 CA-CR 25-0141

FILED 06-12-2026

Appeal from the Superior Court in Yavapai County
No. S1300CR202300618
The Honorable Debra R. Phelan, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine A. Davis
*Counsel for Appellee*

Janelle A. McEachern, Chandler
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge David B. Gass and Chief Judge Randall M. Howe joined.

**F O S T E R**, Judge:

**¶1** Defendant Terry Lee Welfenberg appeals the superior court's denial of his motion for judgment of acquittal for two manslaughter counts. Welfenberg claims the State presented insufficient evidence to establish the *corpus delicti*, or body of the crime, and that insufficient evidence supports the jury's verdicts for each manslaughter count. As the State concedes, Welfenberg's two convictions for manslaughter should be merged. Therefore, this Court affirms Welfenberg's convictions and sentences for manslaughter as modified after merging the manslaughter convictions.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2** Law enforcement officers conducted a welfare check in early April 2023 for a missing person, Bruce[2], who had been missing for over a year. When the officers visited Bruce's residence, the back door appeared to have been forced open. The police found dog bowls containing dog food in the backyard, but they did not find any dogs on the property. Officers intended to speak with Welfenberg, who lived in a trailer on Bruce's property.

**¶3** The officers spoke with Welfenberg, who claimed he had not seen Bruce and did not know where he was. Welfenberg provided the same response when officers returned two separate times. During one of these visits, Welfenberg told the officers he had taken several guns from Bruce's home and had opened a gate on the property allowing Bruce's dogs to run free. On the third visit to the property, officers arrested Welfenberg for burglary because he admitted entering Bruce's house and stealing guns.

---

[1] This Court "view[s] the facts in the light most favorable to sustaining the verdict." *State v. Cropper*, 205 Ariz. 181, 182, ¶ 2 (2003).

[2] This Court uses pseudonyms to protect the identity of victims. *See, e.g., State v. Agueda*, 253 Ariz. 388, 389, ¶ 2 n.1 (2022).

¶4        Following Welfenberg's arrest, a search and rescue team systematically searched the property pursuant to a warrant, discovering a burn pit and what they believed were human bones. This discovery prompted a two-day excavation at the property. The officers dug up the burn pit and sifted through it discovering bone fragments, later identified as both animal and human bones, including remnants of a skull, foot and a tooth. They also discovered a burned medical alert bracelet, with Bruce's name inscribed on it and a charred wallet with a vehicle registration form containing Bruce's name.

¶5        Days later, the detectives interviewed Welfenberg at a detention center where he was being held on the burglary charges. During this interview Welfenberg confessed to killing Bruce. He explained that during an argument, he had "crushed" Bruce's throat when Bruce reached for a gun. Welfenberg then admitted he burned Bruce's body in the burn pit. He explained he regularly disposed of his trash in the burn pit and did the same with Bruce's body. Welfenberg told the detectives he removed the ashes from the pit and placed them to the side of the pit.

¶6        The State charged Welfenberg with two counts of second-degree murder, a class 1 felony (one for causing death or serious physical injury and one for circumstances manifesting extreme indifference to human life); two counts of intentionally killing a domestic animal, a class 5 felony; one count of abandonment or concealment of a dead body, a class 5 felony; one count of tampering with physical evidence, a class 6 felony; one count of burglary in the first degree, a class 2 felony; and one count of theft, a class 6 felony.

¶7        The case proceeded with a four-day jury trial. After the State rested, Welfenberg moved for a Rule 20 directed verdict. The court denied the Rule 20 motion as to the manslaughter counts but granted the motion on the two counts of killing a domestic animal, one count of burglary and one count of theft. After the defense presented its case, the jury convicted Welfenberg of two counts of manslaughter (a lesser-included offense of second-degree murder), abandonment or concealment of a dead body and tampering with physical evidence. *See* A.R.S. §§ 13-1103(A) (manslaughter), -1104(A)(2)–(3) (second-degree murder).

¶8        After the jury's verdict, Welfenberg moved for judgment of acquittal on the tampering with physical evidence count based on an appellate court decision with similar facts, *State v. Larriba-Tucker*, 259 Ariz. 320 (App. 2025). The court granted the motion.

3

**¶9** The State and Welfenberg appealed separately. The State appealed the judgment of acquittal on the tampering with evidence count, which this Court affirmed. *See State v. Welfenberg*, 2025 WL 3764104, 1 CA-CR 25-0177, at *1, ¶ 1 (Ariz. App. Dec. 30, 2025) (mem. decision). In this appeal, Welfenberg challenges his convictions and this Court has jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4033(A).

## DISCUSSION

**¶10** Welfenberg argues (1) the court erred in denying his motion for acquittal on the two second-degree murder counts under Arizona Rule of Criminal Procedure ("Rule") 20, and (2) the State failed to produce substantial evidence supporting the second-degree murder convictions.

**I.  The court properly denied Welfenberg's motion for judgment of acquittal on the second-degree murder counts.**

**¶11** This Court reviews "the denial of a motion for a judgment of acquittal for an abuse of discretion." *State v. Paris-Sheldon*, 214 Ariz. 500, 510, ¶ 32 (App. 2007). A ruling on the sufficiency of the evidence of *corpus delicti* is reviewed for abuse of discretion. *State v. Morris*, 215 Ariz. 324, 333, ¶ 33 (2007). Reversal is only appropriate if "a complete absence of probative facts [ ] support a conviction." *Paris-Sheldon,* 214 Ariz. at 510, ¶ 32. A court errs in granting a judgment of acquittal when "reasonable minds c[ould] differ on the inferences to be drawn from the evidence." *Id.* (citation omitted).

**¶12** Welfenberg argues the court erred in denying his motion for judgment of acquittal because the State had insufficient evidence to establish *corpus delicti*. Welfenberg challenges whether Bruce's death "actually occurred" and whether it "was the result of criminal conduct" committed by him. (Citing *State v. Hall*, 204 Ariz. 442 (2003).)

**¶13** *Corpus delicti* is a Latin phrase that means "body of the crime." *See State v. Jones ex rel. Cnty. of Maricopa*, 198 Ariz. 18, 22, ¶ 12 (App. 2000) (citing *State v. Gillies*, 135 Ariz. 500, 506 (1983)). The doctrine "ensures that a defendant's conviction is not based upon an uncorroborated confession or incriminating statement." *State v. Barragan-Sierra*, 219 Ariz. 276, 280–81, ¶ 12 (App. 2008). It requires that a crime must have actually occurred before a person can be convicted of it. *See Hall*, 204 Ariz. at 453, ¶ 43. And it requires that the State provide evidence that a victim died because of criminal conduct, rather than accident or suicide, before it may introduce a defendant's incriminating statement. *Id.*

¶14 But "[o]nly a reasonable inference of the [crime] need exist before a confession may be considered." *Hall*, 204 Ariz. at 453, ¶ 43. Such inference may be circumstantial. *Id.* Moreover, the State may submit the incriminating statement before it submits any supporting "inference of corpus delicti," as long as the State "ultimately submits adequate proof of the *corpus delicti* before it rests." *Morris*, 215 Ariz. at 333, ¶ 34 (quotations omitted); *see Jones ex rel. Cnty. of Maricopa*, 198 Ariz. at 23, ¶ 14 ("As long as the State submits adequate proof of the *corpus delicti* before it rests, the defendant's statements may be admitted, without prejudice. It is only if the State altogether fails to make this showing that the court should direct acquittal.").

¶15 Here, evidence independent of Welfenberg's incriminating statements supports a reasonable inference that Bruce's death was the result of a crime. Bruce's disappearance came to the attention of law enforcement because the local United States Postmaster, who knew Bruce since 2009, noticed Bruce's mail was "building up." The Postmaster requested law enforcement conduct a welfare check when the mail had been accumulating for about eight months. Though Bruce visited infrequently, the Postmaster observed that "he would come . . . maybe once a month . . . . But he was routinely coming in to pick up other items that he was looking forward to." Bruce's mail "building up" was unusual behavior, the Postmaster testified, because Bruce "used to be in good contact with us, my staff and myself, and let us know when he would be gone for longer durations" than normal.

¶16 When officers conducted the welfare check at Bruce's residence on April 11, 2023, officers noted that the calendar in his home remained open to "March 2022." A look into Bruce's bedroom revealed his medication remained there. A detective confirmed the "March 2022" calendar and found another calendar in the kitchen that was opened to "February 2022." That detective further testified that the most recent receipt he recovered was dated "[e]arly February of 2022."

¶17 At trial, a forensic anthropologist, who had experience in commercial cremation, testified that the bones found in the burn pit were human remains belonging to a male individual over 24 years of age. She further explained that she identified human bone fragments from the same area of the body that were various colors, indicating fracturing before they ended up in separate locations. The forensic anthropologist also testified that the bone fragments in this case revealed "[s]ome form of an external interaction with the remains." She testified that these observations differ from commercial cremation which pulverizes bones.

¶18 The State also presented evidence of the personal effects found at the burn pit. A forensic document examiner tasked with retrieving and restoring information from Bruce's charred wallet applied different wavelengths of light to detect information from papers found in the wallet. Pulling apart layers of paper from the wallet, the examiner discovered a vehicle registration document revealing Bruce as the owner of a vehicle matching the make and model of a vehicle found on Bruce's property. The registration also matched the license plate on the vehicle.

¶19 Additionally, two individuals from the search and rescue team confirmed the burned medical alert bracelet displayed Bruce's name. Later testimony established that the burned medical alert bracelet matched Bruce's second undamaged medical alert bracelet found in his home.

¶20 Despite the State's lack of a physical body to present to the jury, the court did not err in determining that the State met the *corpus delicti* requirement. The record includes reasonable evidence, presented at trial, supporting the court's inference that Bruce's death resulted from criminal conduct and not suicide or natural causes. *See Hall*, 204 Ariz. at 434, ¶ 48 (*corpus delicti* does not require that a victim's body "must be found and identified").

## II. Sufficient evidence supported the jury's verdicts.

¶21 Welfenberg next argues insufficient evidence supported the jury's verdicts. This Court reviews *de novo* whether sufficient evidence supports a conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). This Court limits its review to the evidence presented at trial. *Id.* Evidence is substantial when "reasonable persons could accept [it] as sufficient to support a guilty verdict beyond a reasonable doubt." *Id.* Substantial evidence may be either direct or circumstantial, *State v. Aguirre*, 255 Ariz. 89, 92, ¶ 8 (App. 2023), and is evaluated "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). When there is an absence of probative facts to support a conviction, reversal may be appropriate. *State v. Allen*, 253 Ariz. 306, 341, ¶ 109 (2022).

¶22 As relevant here, second-degree murder without premeditation occurs when a person knows his "conduct will cause the death or serious physical injury of another person" or "recklessly engages in conduct that creates a grave risk of death and thereby causes death of another person" with "extreme indifference to human life." A.R.S. § 13-1104(A)(2)–(3). However, a jury may find the defendant guilty of manslaughter, the lesser-included offense, when "a sudden quarrel or heat

of passion resulting from adequate provocation by the victim," ends in murder. A.R.S. § 13-1103(A)(2).

¶23 Because the State provided sufficient evidence to establish the *corpus delicti* of Bruce's death, the jury had both the circumstantial evidence presented to establish the *corpus delicti*—the burned remains and personal effects—and Welfenberg's confession to consider.

¶24 Welfenberg agreed to an interview with detectives after receiving his *Miranda* warning. *See Miranda v. Arizona*, 384 U.S. 436 (1966). In that interview, Welfenberg confirmed he had a court-appointed attorney representing him on the burglary charge. The officers then said they wanted to discuss "something different" and began asking Welfenberg about the burn pit and the remains found in it.

¶25 Welfenberg explained that he and Bruce had "a bit of an argument" in a truck when Bruce pulled a gun from his ankle holster. Welfenberg told the detectives when Bruce revealed the gun, Welfenberg "crushed his throat," knowing it would be a lethal strike based on his experience as a combat soldier. Welfenberg also told the detectives he "watched [Bruce] kick it out in the truck." Following Bruce's death, Welfenberg admitted he "drove [Bruce] home" and "got rid of him." When detectives asked Welfenberg why he lied to the officers who conducted the welfare check, he replied "I had just killed my landlord or partner."

¶26 During trial, the court held a voluntariness hearing concerning some statements Welfenberg made to detectives. But the court found that admitting these statements did not violate *Miranda*.

¶27 Based on the evidence in the record and his confession, a reasonable jury could infer that Welfenberg knew crushing Bruce's throat "would cause death or serious physical injury" or that he "recklessly engage[d] in conduct that . . . cause[d] death of another person" with "extreme indifference to human life." A.R.S. § 13-1104(A)(2)–(3); *see Douglas v. State*, 26 Ariz. 327, 337 (1924) ("[A] conviction cannot be sustained upon the mere confession of the accused . . . but the confession, when freely and voluntarily made, the corpus delicti being established, even though by purely circumstantial evidence, is sufficient to sustain the conviction."). Moreover, Welfenberg's concealment of Bruce's whereabouts and body showed a "consciousness of guilt." *See Allen*, 253 Ariz. at 342, ¶ 115. Therefore, substantial evidence supports the jury's determination of guilt.

### III.     Welfenberg's manslaughter counts should be merged.

**¶28**         In its answering brief, the State concedes Welfenberg's manslaughter counts "should merge into a single conviction and sentence" as the homicide counts arose from the same victim. Welfenberg did not raise this issue in his opening brief and did not file a reply brief. Though this Court does not search the record for errors, it will not ignore fundamental error. *State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007); *see State v. Hollenback*, 212 Ariz. 12, 16, ¶ 12 (App. 2005) ("The imposition of an illegal sentence is fundamental error.").

**¶29**         The record confirms the jury convicted Welfenberg for two convictions based on one act and is serving identical 14-year concurrent sentences for two counts of manslaughter, despite an offense to one victim. Because a defendant who murders a single victim may only receive a single conviction and sentence for the homicide, *State v. Williams*, 232 Ariz. 158, 161, ¶ 10 (App. 2013) ("[T]he crime of murder of a single victim necessarily results in one conviction and one sentence"), Welfenberg's dual convictions and sentences for manslaughter of the same victim are inconsistent with Arizona law.

**¶30**         Therefore, pursuant to A.R.S. § 13-4036, this Court modifies Welfenberg's manslaughter convictions, merging them into a single conviction and vacating one of the 14-year concurrent sentences. A.R.S. § 13-4036; *see State v. Hunter*, 102 Ariz. 472, 477–78 (1967); *see also Ariz. Podiatry Ass'n v. Dir. of Ins.*, 101 Ariz. 544, 547–48 (1966) (statutes enacted before the establishment of the Court of Appeals which confer authority on the Supreme Court also confer the same authority to the Court of Appeals).

### CONCLUSION

**¶31**         This Court affirms as modified.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR